Rodney Joe Polk
















IN THE
TENTH COURT OF APPEALS
 

No. 10-97-070-CR

     RODNEY JOE POLK,
                                                                         Appellant
     v.

     THE STATE OF TEXAS,
                                                                         Appellee
 

From the 204th District Court
Dallas County, Texas
Trial Court # F96-46964-Q 
                                                                                                                
                                                                                                         
O P I N I O N
                                                                                                                

      Appellant Polk appeals his conviction for aggravated robbery, for which he was sentenced to
15 years in the Institutional Division of the Texas Department of Criminal Justice.
      Appellant was indicted for the aggravated robbery of Juan Cardenas on June 2, 1996. The
indictment alleged that Cardenas was threatened, placed in fear of bodily injury and death, and that
Appellant used a deadly weapon, a knife. Appellant pled not guilty.
      Zorana Jackson testified that she lives at 1720 Denley; that on June 2, 1996, she ordered a
pizza from Pizza Inn. The pizza delivery man, Juan Cardenas, arrived at her door about 9:45
p.m. reporting that he had been robbed. The police and Cardenas' supervisor were called. While
waiting for the police to arrive, Ms. Jackson saw Appellant, her next door neighbor, running
toward his house. She believed he had committed the robbery because he was running fast and
because of the way he was acting.
      Cardenas, the complainant, testified he was a part time delivery man for Pizza Inn; that on
June 2, 1996, he was directed to deliver pizza to 1720 Denley; that he had difficulty finding the
residence, but eventually arrived at the address; that Appellant came up from the house next door
and asked him if he needed help in finding a location, then placed a knife in Cardenas' side and
demanded money; that Cardenas then gave him a $20 bill, and Appellant then ran. Cardenas gave
chase briefly but stopped and delivered the pizza to Ms. Jackson, and called the police from her
house. Cardenas identified Appellant in court as the person who put the knife to his ribs and
robbed him.
      Officer Charles James testified he answered the call to the police. He spoke with Cardenas
and Ms. Jackson and then spoke with Elijah Birdine who lived across the street. Birdine said he
saw Appellant at Cardenas' car and then saw him fleeing from that location. Thereafter, Officer
James went next door and spoke with Appellant, obtaining his name and birth date. When Officer
James tried to verify the name and date of birth, he discovered the date of birth was incorrect and
that Appellant had lied to him. Appellant's mother gave the officer his correct date of birth. 
Officer James testified that a knife as used in this case was a deadly weapon and that Appellant
was arrested for aggravated robbery.
      Birdine, the neighbor across the street from Ms. Jackson, testified he was in his yard on June
1, 1996, and saw Appellant go to the passenger side of Cardenas' vehicle which was parked in
front of the Jackson house. He heard the driver say, "Don't." Appellant was at the vehicle three
or four minutes and then ran away. Birdine identified Appellant in court.
      Appellant's mother, Martha Polk, testified she and Appellant live next door to Zorana
Jackson. On June 1, 1996, she returned home from church about 9:45 p.m. Appellant was home
both when she left about 7:50 p.m. and when she returned. She testified she loved her son and
did not want to see him get in trouble.
      Michael McDonald testified that he was the manager of Pizza Inn in June 1996; that Juan
Cardenas worked for him for three or four months; that Cardenas had been short of money from
pizza deliveries; that he had fired him for this reason; and that such money was deducted from
Cardenas' paycheck. Additional testimony from McDonald will be addressed in our discussion
of Appellant's point of error.
      The jury found Appellant guilty and assessed his punishment at 15 years in prison. He
appeals on one point of error: "The trial court erred in restricting Appellant's cross examination
of the complaining witness’ employer concerning complainant's suspected drug use at work."
      Witness McDonald testified outside the presence of the jury that he was the manager of the
Pizza Inn in June 1996; that Cardenas worked three or four months for him; and that he had been
short of money from deliveries. After the robbery Cardenas missed a lot of days from work and
his appearance started to go down. McDonald stated: "I thought he had a problem. He did his
job; he was a good worker and a good person but he seemed to have some problems. He came
up short with money quite a few times; he came to work late one morning looking like he had a
hangover, and had a big blister on his lips, which indicated to me from what I've heard and known
about drugs, that this comes from a pipe that they use to smoke crack." McDonald stated that he
terminated Cardenas in August because he was not returning with money. He said, "I've heard
from other people he always wanted to borrow money and they said he had a crack problem. I
have never seem him do any thing illegal."
      The jury was returned to the courtroom, and McDonald testified before the jury that he was
the manager of the Pizza Inn since January 1996; that Cardenas worked three or four months for
him; that he had some problems with Cardenas and that he terminated him for not turning in his
money. On cross examination, he testified he took the shortages out of Cardenas' paycheck.
      The court then recessed for the day. The next day Appellant's counsel stated to the court: 
"I don't think I made it clear that I still wanted to offer testimony Michael McDonald
regarding potential crack use, Juan Cardenas' disheveled appearance, his downhill
slide, the burn on his lip that was consistent with a crack pipe; that sort of behavior that
would also [show] motive and bias in this case. And I would [like] to be able to recall
Mr. McDonald and put on that evidence on."

The request was denied by the court and, thereafter, both sides rested and closed.
      The right to confront witnesses does not prevent a trial court from imposing some limits on
the cross examination of a witness. Trial courts retain some discretion in deciding how and when
bias may be proved and what collateral evidence is material for that purpose. Springs v. State,
652 S.W.2d 405 (Tex. Crim. App. 1983); Hurd v. State, 725 S.W.2d 249, 252 (Tex. Crim App.
1987); Ramos v. State, 819 S.W.2d 931, 941 (Tex. App.—Corpus Christi 1991, pet. ref'd).
      Appellant attempts to impeach the victim in this case through McDonald's testimony regarding
suspected use of crack. Rule 608(b), Texas Rules of Criminal Evidence


 provides:
Specific instances of the conduct of a witness, for the purpose of attacking or supporting
his credibility, other than conviction of crimes as provided in Rule 609, may not be
inquired into on cross examination of the witness nor proved by extrinsic evidence.

      Additionally, McDonald's suspicions of Cardenas' use of crack occurred in a time frame after
the robbery, and much of it was based on hearsay. The determination of the admissibility of
evidence is within the trial court's discretion, and will not be disturbed absent a clear abuse of
discretion. Werner v. State, 711 S.W.2d 639, 645 (Tex. Crim. App. 1986); Ramos, supra, at
941.
      The trial court did not abuse its discretion or err in restricting Appellant's cross examination
of witness McDonald concerning Cardenas' suspected drug use at work.
      Appellant’s point is overruled.
      The State presents a cross point: "The judgment should be reformed to reflect the affirmative
finding by the jury that Appellant used a deadly weapon."
      The indictment charged Appellant with aggravated robbery with a deadly weapon, to-wit, a
knife. There was evidence the knife used by Appellant in committing the robbery was, in fact,
a deadly weapon. The jury found in its verdict that Appellant was guilty of the offense of
aggravated robbery as charged in the indictment. However, the judgment incorrectly states: "No
finding with regards to finding on a deadly weapon."
      The State's cross point is sustained. The judgment is reformed to reflect the affirmative
finding by the jury that Appellant used a deadly weapon. The judgment, as reformed, is affirmed. 
Tex. R. App. P. 43.2(b); Polk v. State, 693 S.W.2d 391, 396 (Tex. Crim. App. 1985); Martinez
v. State, 874 S.W.2d 267, 268 (Tex. App. —Houston [14th Dist.] 1994, pet ref'd).
 
                                                                         FRANK G. McDONALD
                                                                         Chief Justice (Retired)

Before Chief Justice Davis,
      Justice Vance and
      Chief Justice McDonald (Retired)
Affirmed as reformed
Opinion delivered and filed April 28, 1999
Do not publish