Darwin Derwood **BRYANT**, Appellant,

v.

The **STATE** of Texas, Appellee.

Nos. B14–90–01067–CR to
B14–90–01069–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 21, 1991.

Kristine C. Woldy, Houston, for appellant.

Carol M. Cameron, Houston, for appellee.

Before JUNELL and ELLIS, JJ., and ROBERT E. MORSE, Jr., Former Justice (Sitting by Designation).

## OPINION

ROBERT E. MORSE, Jr., Former Justice.

Appellant was charged with the felony offense of theft by receiving in two separate indictments, TEX.PENAL CODE ANN. § 31.03 (Vernon 1974), and charged with the felony offense of theft in a third indictment. TEX.PENAL CODE ANN. § 31.03 (Vernon 1974). The three cases were consolidated for trial. Appellant filed a motion to dismiss the indictments for failure to comply with the terms of the Interstate Agreement on Detainers (IAD), TEX.CODE CRIM. PROC.ANN. art. 51.14 (Vernon 1979). After this motion was denied, appellant waived his right of trial by jury and entered a plea of nolo contendere. The trial court found appellant guilty on all three charges and sentenced him to seven years confinement in the Texas Department of Criminal Justice, Institutional Division. We affirm.

Appellant was first arrested for the theft charges at issue here in February of 1988. After several disputes with various bondsmen, however, appellant remained in a "no-arrest" status for some time. On October 10, 1988, he turned himself in to Texas DPS officials in Huntsville, believing he was surrendering on the Harris County charges, but discovering that he was being sent to the Polk County jail on burglary charges there. Harris County authorities were notified of appellant's location and placed a detainer on him with Polk County. On October 17, appellant was transferred to Jefferson County jail in Beaumont on federal bank robbery charges. Harris County officials again learned of the transfer and placed another detainer on appellant at that location. Appellant contends that, while in Beaumont, he personally wrote a letter to Judge Walker, presiding judge of the trial court herein, demanding a speedy trial and requesting an attorney. No evidence of the existence of such a letter was presented to the court, however, in the hearing on appellant's motion to dismiss, other than appellant's own testimony.

On March 23, 1989, appellant was sentenced on the federal charges in Beaumont. Then, beginning on April 5, appellant was transferred two more times—first, to Montgomery County, Texas, and then to a federal correctional facility in El Reno, Oklahoma—before he was transferred to a Federal Correctional Institution (FCI) in Memphis, Tennessee on April 20.

The Harris County Sheriff's Department received a letter dated April 21 notifying them that appellant was in custody at the FCI in Memphis, and on May 17 placed their detainer with Memphis. The detainer was recorded by Memphis officials on May 23.

Twice, first on July 7 and later on July 17, appellant again sent letters to Judge Walker requesting a speedy trial on the

outstanding charges against him in Harris County. The July 7 letter was received by the Harris County District Attorney's office on July 18.

On August 15, 1989, Memphis officials received a completed IAD petition from appellant and forwarded the same to officials in Harris County. Included in the petition was an "Offer to Deliver Temporary Custody" signed by the Memphis warden. In response to appellant's request, Harris County prepared the required documents for securing temporary custody of appellant. These materials were delivered to Memphis on September 14, twenty-four (24) days after receiving appellant's request under the IAD.

On September 22, Harris County contacted the Memphis facility and was informed that appellant was unavailable for transfer. Then, from September 26, to July 12, 1990, appellant was in the temporary custody of other jurisdictions for disposition of charges pending in those other jurisdictions. On August 9, Harris County was advised that appellant was available for transfer, and within five days, Harris County obtained temporary custody of appellant.

An attorney was appointed for appellant on August 24, and on September 19, appellant filed his motion to dismiss. The hearing on this motion began on October 22, and was continued until November 1. At the close of the hearing, the trial court denied the motion, agreed to reconsider, and requested proposed findings of fact and conclusions of law. Then, on November 16, the court upheld its original ruling, made findings and conclusions, and denied appellant's motion. Whereupon, appellant entered a plea and was found guilty and sentenced as aforesaid. This appeal followed.

The sole issue on appeal is whether the trial court erred by overruling appellant's motion to dismiss the indictments for failure to comply with the terms of the said IAD. The IAD was enacted to provide a method where a prisoner in another state or federal institution could require disposition of charges pending against him. It is a compact among member states, the United States, the territories and possessions of the United States, the District of Columbia, and the Commonwealth of Puerto Rico. The purpose of the IAD is expressed in Article I, which reads as follows:

> The party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations, or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints.

TEX.CODE CRIM.PROC.ANN. art. 51.14, Article I (Vernon 1979).

The IAD provides that a prisoner subject to a detainer from another state is entitled to be brought to trial within 180 days after he delivers to the charging state written notice of his place of imprisonment and his request for a final disposition of the indictment against him. *Id.* at Article III(a). This time period is subject to extensions by tolling per Article VI when the prisoner is unable to stand trial, and for allowable continuances per Article III(a). The written request for final disposition is to be sent by the prisoner to the warden, commissioner of corrections, or other official having custody of him, who shall promptly forward it together with a certificate to the appropriate charging official and court. *Id.* at Article III(b). The IAD further provides that, in the event an action on the indictment, information, or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in Article III (180 days), the appropriate court where the charge is pending shall enter an order dismissing the indictment with prejudice and the detainer based on the indictment shall no longer be in effect. *Id.* at Article V(c).

**930**

Appellant bases his demand for dismissal on an alleged violation of Article III(a) of the IAD. He contends that Harris County authorities violated the speedy disposition provision of this section by not trying him within 180 days of receipt of his request for final disposition. *Id.* at Article III(a).

The triggering event for the running of the 180 day time period is the receipt by the non-custodial state—in this case, Texas—of the prisoner's request for a final disposition of the indictments against him. Article III(a) of the IAD specifically provides that the notice and request for a final disposition

> shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decision of the state parole agency relating to the prisoner.

*Id.* at Article III(a).

The trial court found that appellant's request dated August 15, 1989, was the first to satisfy the requirements mandated by the above provision. We agree. Harris County officials received this request six days later. Thus, August 21, 1989, was the triggering date for the 180 day time period. Appellant contends that he made numerous efforts to obtain relief prior to this date, and that most of these efforts were sufficiently in compliance with Article III(a) so as to trigger the state's beginning of IAD action. He further argues that any deficiencies in the earlier attempts to invoke the IAD were through no fault of his own. Rather, he claims that officials in Memphis failed to provide him in a timely fashion with the information to which he was entitled under the IAD concerning the proper procedures for having detainers removed.

■ With regard to appellant's claim that delays in making and sending a proper request were due to events or omissions occurring in Memphis, the failure of another state to follow the IAD does not require dismissal of the Texas charges. *Burton v.*

*State,* 805 S.W.2d 564, 575 (Tex.App.—Dallas 1991, pet. ref'd) (*citing Schin v. State,* 744 S.W.2d 370 (Tex.App.—Dallas 1988, pet. ref'd)). Appellant does not allege that Texas authorities contributed to these delays, but rather that once the Texas authorities received his request for final disposition on August 21, 1989, they failed to bring him to trial within 180 days as required under the IAD. Thus, to order dismissal of the Texas indictments for delays caused by authorities in Memphis prior to Harris County's receipt of appellant's request for disposition would be to expand the relief authorized by the IAD. Under the IAD, the two pertinent situations to this appeal in which dismissal of the receiving state's charge is permitted are as follows:

> (1) if, after a prisoner has made the required request pursuant to Article III, trial does not occur within the required 180 days; and
>
> *       *       *       *       *       *
>
> (3) when the receiving state fails or refuses to accept temporary custody of the prisoner.

*Id.* Both of these situations are discussed below. Inasmuch as the legislature chose to specify situations when dismissal is the appropriate remedy, the courts should not expand that relief to cover possible procedural errors made by prison officials in another state. *Schin v. State,* 744 S.W.2d at 374.

■ Before this court can determine whether appellant was brought to trial "within the required 180 days," we must first determine the date that triggered the running of this time period. Appellant claims that letters written prior to the documents dated August 15, 1989, were sufficiently in compliance with the IAD requirements so as to trigger the beginning of the 180 day time period. We disagree. Appellant's letters to Judge Walker and the Harris County District Attorney's office merely state his desire for a speedy trial, a final disposition of the detainers, and the dismissal of all charges against him. Neither the certificate from the Memphis officials nor any of the other information required by

Article III(a) was included with these letters. When appellant took it upon himself to notify the prosecutor and the Harris County court directly, he was responsible for seeing that the notice was sent in the form required by the IAD. *Burton v. State*, 805 S.W.2d at 575. Because appellant's prior correspondences never properly complied with the notice requirements of the IAD so as to constitute "the required request," the 180 day period did not begin to run until Texas authorities received the completed request form on August 21, 1989.

■ Taking August 21, 1989, as the starting point for the running of the 180 time period, we must next consider whether appellant was in fact brought to trial within 180 days from this date. The record shows that the trial court conducted a hearing on appellant's motion to dismiss on October 22, 1990, 426 calendar days after Harris County authorities received appellant's request, and that trial was concluded on November 16. However, of the 426 days, we conclude that the time limit was tolled for the following 288 days when appellant was "unable to stand trial" in this jurisdiction:

1.) September 26, 1989 to January 3, 1990 (100 days) representing the period that appellant was in the custody of the East Baton Rouge Parish Sheriff's Department.

2.) January 3, 1990 to June 12, 1990 (161 days) representing the time that appellant was in the custody of the United States Marshall.

3.) June 12, 1990 to August 9, 1990 (27 days) representing the time from appellant's return to the FCI in Memphis, Tennessee, until Memphis officials notified Harris County officials that appellant was available for transfer to Harris County for temporary custody.

Thus, excluding the days not charged to the State by reason of tolling, appellant was brought to trial 138 days (and trial was completed within 164 days) after his request for final disposition was received pursuant to the IAD.

Article VI(a) of the IAD provides that the running of time periods under the act "shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter." *Id.* at Article VI(a). Appellant contends that Texas should be charged with the period of time during which he was undisputedly in the custody of officials in Louisiana and subsequently in the custody of the United States Marshall. He alleges that had Texas exercised due diligence in attempting to obtain temporary custody of appellant after they received notice of his availability on August 21, 1989, then this matter could have been disposed of before the time that appellant was sent to Louisiana on September 26, 1989. We disagree.

After receiving appellant's request on August 21, 1989, Harris County authorities completed their preparation of the required forms for obtaining the presence of appellant. Officials in Memphis received these papers from Harris County on September 14, and 12 days later appellant was transferred to the East Baton Rouge Parish Sheriff's Department for the disposal of charges against him there. We do not find that Harris County's failure to obtain temporary custody of appellant within the 37 days following their receipt of his request to be a violation of the IAD requiring dismissal of the indictments. Although Article V(c) of the act provides for dismissal of any detainer "if the appropriate authority shall refuse or fail to accept temporary custody" of the prisoner, we do not find the 37 days to be such a "refus[al] or fail[ure]" as to require this result. After receiving appellant's request, Texas had 180 days within which to bring appellant to trial. The fact that it took the Harris County officials longer than appellant would have liked is of no consequence. Texas had no knowledge that appellant was being sought by officials in Louisiana, and once he was transferred, he was "unable to stand trial" in Texas until his return to the Memphis facility. Therefore, the time spent in custody of Louisiana officials and the United States Marshall are excused from the time computation.

After his return to Memphis on June 12, 1990, he remained there until Harris County officials were notified of his availability on August 9. Appellant claims that this period, too, should be charged to Texas and not excused. Again, we disagree. The record reflects that in February, April, and May of 1990, Harris County officials contacted officials in Memphis to find out the status of appellant's availability. We do not find any requirement that Texas monitor appellant's status on a more frequent basis than this. When Harris County was notified by authorities in Memphis of appellant's availability for transfer on August 9, 1990, they promptly obtained his custody 5 days later on August 14. Thus, we hold that the State did not violate the IAD by failing to bring appellant to trial within 180 days following the receipt of his request for a final disposition.

Because we hold that appellant's right to a speedy trial under the IAD was not violated, we do not reach the issue of the statute's constitutionality. Accordingly, we overrule appellant's sole point of error and affirm the judgment of the trial court.