OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 The core issue before us on this appeal is whether defendant, in concurring in the court’s suggested trial date set beyond the 180-day period mandated by the Interstate Agreement on Detainers (IAD) (CPL 580.20), waived his right to a speedy trial under that statute. Concluding that no waiver was effected^ we grant defendant’s motion to dismiss the indictment for violation of the statute’s speedy trial provisions.
 

 In December 1993, Monroe County law enforcement officials lodged a detainer
 
 [1]
 
 against defendant, then incarcerated at the Lorain Correctional Institution in Grafton, Ohio. The detainer notified the Ohio authorities that defendant was wanted for
 
 *408
 
 committing murder in the second degree and robbery in the first degree in Monroe County. After learning of the detainer, defendant exercised his rights under article III of the IAD and formally requested a final disposition of the untried New York charges. Defendant’s request was delivered to the Monroe County Court and prosecutor on January 10, 1994, triggering IAD speedy trial provisions requiring defendant to be tried within 180 days.
 

 Defendant was formally indicted on March 11, 1994. Two months later, in May, defendant filed several pretrial motions. The court ruled on those motions in December 1994 and shortly thereafter, on January 9, 1995, the prosecutor and defense counsel appeared in court to fix a trial date. Addressing the Judge, the prosecutor noted that it was his understanding that “the Court may have preliminarily discussed a May 1st [trial] date.” The prosecutor informed the Judge that May 1 was a convenient date for the People to begin trial. The court then inquired: “How is that with the defense counsel?” Defendant’s attorney responded: “That will be fine, Your Honor.”
 

 On April 17, 1995 — 462 days after Monroe County authorities received defendant’s notice of request for final disposition — defendant moved to dismiss the indictment, arguing that the prosecution had failed to bring him to trial within the 180-day statutory speedy trial period. Denying that motion, the trial court held that defendant had waived his speedy trial rights by concurring in the May 1 trial date, which was beyond the statutory period (164 Misc 2d 1032). Defendant was subsequently convicted, after a jury trial, of murder in the second degree and robbery in the first degree. The Appellate Division affirmed. We now reverse.
 

 Discussion
 

 Prior to adoption of the IAD in 1957,
 
 [2]
 
 there were no formal procedures governing detainers. A law enforcement official interested in prosecuting an individual incarcerated in another
 
 *409
 
 jurisdiction would simply file a detainer with prison authorities in that jurisdiction advising them that charges were pending and requesting notification when release of the prisoner was imminent. Once a detainer was filed, neither the requesting nor the custodial authority was legally bound to act upon it
 
 (see generally,
 
 Note,
 
 The Interrelationship Between Habeas Corpus Ad Prosequendum, the Interstate Agreement on Detainers, and the Speedy Trial Act of 1974: United States v. Mauro,
 
 40 U Pitt L Rev 285, 289 [1979]; Note,
 
 The Interstate Agreement on Detainers: Defining the Federal Role,
 
 31 Vand L Rev 1017, 1021 [1978]). Indeed, as a practical matter it was virtually impossible for the State lodging the detainer to obtain custody of the inmate prior to completion of sentence in the confining State; the necessary procedures were cumbersome and expensive, and thus seldom invoked (Fried,
 
 The Interstate Agreement on Detainers and the Federal Government,
 
 6 Hofstra L Rev 493, 497 [1978]). Moreover, a prisoner’s demand to be tried pursuant to a detainer on charges outstanding in a jurisdiction other than the State of incarceration had no legal effect because there were no procedures to compel transfer to the State that had filed the detainer
 
 (see,
 
 Council of State Governments, Suggested State Legislation Program for 1957, Agreement on Detainers, at 78).
 

 Detainers lodged under the old system, therefore, inevitably gave rise to speedy trial problems.
 
 [3]
 
 By the time the prisoner’s first sentence was served, memories had faded, events had lost their perspective, witnesses had disappeared and evidence had been lost or destroyed
 
 (see, e.g., Dickey v Florida,
 
 398 US 30). Designed to change this delay-ridden system, the IAD’s stated purpose is to encourage the orderly, expeditious disposition of untried accusatory instruments by providing cooperative procedures for securing the transfer of defendants incarcerated in other States (CPL 580.20, art I).
 

 
 *410
 
 In furtherance of its objective, the IAD specifies extradition procedures, fixes speedy trial periods and mandates severe penalties for noncompliance. Under article III, which applies here, a prisoner may request final disposition of untried charges, thereby initiating transfer to the jurisdiction where the charges are pending (CPL 580.20, art III [a]). Once the prosecuting officer and the appropriate court receive notice of such a request, the prisoner must be brought to trial within 180 days. That period gives the prosecutor “ample time to proceed * * * yet it is short enough to give the prisoner ground to expect that his status can be determined within a measurable and reasonable period” (1957 NY Legis Doc No. 46, Appendix III-A, at 177-178).
 

 Where a defendant is not brought to trial within the statutory period, the IAD requires that an indictment be dismissed with prejudice (CPL 580.20, art V [c];
 
 see, United States v Ford,
 
 550 F2d 732, 743-744 [2d Cir],
 
 affd sub nom. United States v Mauro,
 
 436 US 340). Although the penalty of dismissal is by its terms mandatory, the IAD provides two exceptions: the request for speedy disposition of the charges is void if the prisoner escapes from custody, and the court may grant reasonable and necessary continuances, but only for good cause shown in open court with the prisoner or his attorney present (CPL 580.20, art III [a], [fl; art IV [c]). Thus, where there is a period during which the court hears and decides defense motions, that "period will be excluded from the speedy trial time on the ground that such delay constitutes a necessary or reasonable continuance
 
 (see, People v Torres,
 
 60 NY2d 119, 127-128). In the present case, the period from May 18, 1994 (when the case was adjourned for defense motions) to December 5, 1994 (when the court rendered a decision on those motions) was excludable on that basis (CPL 580.20, art III [a]).
 

 A closer question, however, is whether the 55-day delay from January 9, 1995 (when the parties appeared in court to fix a trial date) to April 17, 1995 (when defendant filed his motion to dismiss the indictment) should also be excluded from calculation of the 180-day speedy trial period. The problem arises because, as noted above, defendant concurred in the May 1 trial date suggested by the court and agreed to by the prosecution, even though that date was beyond the statutory period. We conclude, however, that defense counsel’s concurrence did not constitute a waiver of defendant’s statutory right to a speedy trial.
 

 Under the IAD, defendants have a single responsibility: to notify prison officials of their request to be brought to trial on
 
 *411
 
 the pending out-of-State charges (CPL 580.20, art III [b]). Otherwise, the burden of complying with statutory requirements falls upon the respective officials involved. Thus, ensuring that a defendant is brought to trial within the mandated speedy trial period is the responsibility of prosecutors and courts, not defendants
 
 (see, e.g., United States v Ford,
 
 550 F2d 732, 743,
 
 supra
 
 [Trial Judge has responsibility to reassign cases to assure defendants their right to a speedy trial]).
 

 From the statutory language and objectives it follows that the IAD does not impose an obligation on defendants to alert the prosecution or the court to their LAD speedy trial rights or to object to treatment that is inconsistent with those rights
 
 (Brown v Wolff,
 
 706 F2d 902, 907 [9th Cir]). Indeed, to impose such an obligation on defendants would be to shift the burden of compliance with the IAD from State officials, where the Legislature very deliberately placed it. Such a shift would diminish the statute’s effectiveness and enforceability
 
 (see, United States v Eaddy,
 
 595 F2d 341, 345 [6th Cir]).
 

 Speedy trial rights guaranteed by the IAD may, of course, be waived by a defendant. Generally, such waiver may be accomplished explicitly or by an affirmative request for treatment that is contrary to or inconsistent with those speedy trial rights
 
 (see, United States v Odom,
 
 674 F2d 228, 230 [4th Cir],
 
 cert denied
 
 457 US 1125 [waiver by defendant’s request for an adjournment];
 
 United States v Ford,
 
 550 F2d 732,
 
 supra
 
 [waiver by defendant’s request to be returned to Massachusetts prior to his trial];
 
 United States v Scallion,
 
 548 F2d 1168 [5th Cir],
 
 cert denied
 
 436 US 943 [defendant estopped from asserting an IAD violation because return to New York was at his own request in order to be present for a parole hearing];
 
 see also, People v Torres,
 
 60 NY2d, at 125,
 
 supra; see also, People v Prosser,
 
 309 NY 353, 358).
 

 In
 
 United States v Eaddy
 
 (595 F2d 341,
 
 supra), for
 
 example, defense counsel indicated that he “did not care” where his client was held pending trial on Federal charges. Thereafter, in contravention of the IAD’s anti-shuttling provisions, authorities transferred defendant back and forth between Federal and State prisons
 
 (id.,
 
 at 343). The court held that defendant did not waive his IAD rights by failing to state a preference as to his place of incarceration
 
 (see also, People v Allen,
 
 744 P2d 73 [Colo] [defendant’s agreement to trial dates set beyond statutory time period held insufficient to support a finding of waiver]).
 

 
 *412
 
 Similarly, where, as here, the defendant simply concurred in a trial date proposed by the court and accepted by the prosecution, and that date fell outside the 180-day statutory period, no waiver of his speedy trial rights was effected. Defendant’s mere concurrence in the suggested date did not constitute an affirmative request for a trial date beyond the speedy trial period. Moreover, it is the burden of the prosecutor and the court to comply with the IAD’s speedy trial requirements. Because defendant was not brought to trial within the 180-day period, the indictment must be dismissed in accordance with the mandate of IAD article V (c).
 

 Accordingly, the order of the Appellate Division should be reversed, defendant’s motion to dismiss the indictment granted and the indictment dismissed.
 

 Judges Bellacosa, Smith, Levine, Ciparick and Wesley concur.
 

 Order reversed, etc.
 

 [1]
 

 . A detainer is ‘“a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction’ ”
 
 (United States v Mauro,
 
 436 US 340, 359). The term has also been defined as “a warrant filed against a person already in custody with the purpose of insuring that he will be available to the authority which has placed the detainer” (Council of State Governments, Suggested State Legislation Program for 1957, Agreement on Detainers, at 74).
 

 [2]
 

 . First suggested in 1948 by various correctional organizations, the IAD was developed over a considerable period of time. The specific language ultimately included in New York’s Criminal Procedure Law was drafted by an interstate conference on correctional problems held in 1956 under the joint auspices of the American Correctional Association, the National Probation and Parole Association, the Council of State Governments and the Joint Legislative Committee on Interstate Cooperation
 
 (see,
 
 1957 NY Legis Doc No. 46, Appendix III-A, at 178). Over the years, the majority of jurisdictions, including the Federal Government in 1970, have adopted the IAD.
 

 [3]
 

 . Other problems were identified as well. For example, the lodging of a detainer against an inmate presented a threat of further imprisonment for an unknown period and obscured the probable date of a prisoner’s return to society. That was seen as impeding the ability of prison officials to develop an effective institutional treatment plan for that inmate (see, Letter of Deputy Commr of NY St Dept of Correction, Bill Jacket, L 1957, ch 524). Additionally, concern was expressed that detainees, considered higher security risks, were denied full access to rehabilitation programs, educational opportunities, vocational training and recreational privileges (see, Note,
 
 The Interrelationship Between Habeas Corpus Ad Prosequendum, the Interstate Agreement on Detainers, and the Speedy Trial Act of 1974: United States v. Mauro,
 
 40 U Pitt L Rev 285, 289-290).