Billy Dean WALKER, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 10–04–00313–CR.

Court of Appeals of Texas,
Waco.

July 19, 2006.

844

Walter M. Reaves, Jr., West, for Appellant.

John W. Segrest, McLennan County Criminal Dist. Atty., Waco, for Appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

**LEAD OPINION**

FELIPE REYNA, Justice.

A jury convicted Billy Dean Walker, Jr. of six counts of indecency with a child and assessed his punishment at twenty years'

imprisonment and a $10,000 fine on each count. Walker contends in five points that: (1) the court erred by failing to dismiss the indictment with prejudice because he was not tried within 180 days after requesting a transfer to Texas from Tennessee under article III of the Interstate Agreement on Detainers Act; (2) he received ineffective assistance of counsel because counsel failed to request such a dismissal; (3) the court erred by ordering his Texas sentences to run consecutively with his Tennessee sentences; (4) the court abused its discretion by admitting evidence of extraneous offenses; and (5) his right to jury trial and his right to due process were violated under *Apprendi v. New Jersey* and its progeny because the jury was not asked to determine whether his Texas sentences should run consecutively with his Tennessee sentences. We will affirm.

## I. The Interstate Agreement on Detainers Act

Walker contends in his first point that the court erred by failing to dismiss the indictment with prejudice because he was not tried within 180 days after requesting a transfer to Texas under article III of the Interstate Agreement on Detainers Act. The State provides a five-part response, contending: (1) the IAD does not apply because there is nothing in the record to indicate that Texas authorities filed a detainer with Tennessee authorities; (2) the record does not reflect that Walker properly served the Texas prosecutor with a request to be transferred under the IAD; (3) Walker failed to preserve this issue for appellate review because he failed to request a dismissal in the trial court;[1] (4)

---

1. Although we will ultimately conclude that Walker failed to preserve this issue by failing to object, we nevertheless address the State's

two preceding contentions regarding the procedural requirements of the IAD because these issues are likely to arise in subsequent

there is nothing in the record to indicate that his trial was not continued "for good cause"; and (5) article III of the IAD is unconstitutional.

■■■ Article III of the IAD "basically ... gives a prisoner the right to demand a trial within 180 days." *Alabama v. Bozeman*, 533 U.S. 146, 151, 121 S.Ct. 2079, 2083, 150 L.Ed.2d 188 (2001). This 180–day time period "does not commence until the prisoner's request for final disposition of the charges against him has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him." *Fex v. Michigan*, 507 U.S. 43, 52, 113 S.Ct. 1085, 1091, 122 L.Ed.2d 406 (1993).

We conduct a *de novo* review of the legal question of whether there has been compliance with the requirements of the IAD. *State v. Miles*, 101 S.W.3d 180, 183 (Tex. App.-Dallas 2003, no pet); *Lindley v. State*, 33 S.W.3d 926, 930 (Tex.App.-Amarillo 2000, pet. ref'd); *State v. Sephus*, 32 S.W.3d 369, 372 (Tex.App.-Waco 2000, pet. ref'd). We review any factual findings underlying the issue of compliance with the IAD under a clearly erroneous standard. *Id.*

## II. The Detainer Was "Lodged" Against Walker

■■■ The State contends that the provisions of article III do not apply because there is nothing in the record to indicate that Texas authorities filed a detainer with Tennessee authorities. We disagree.

Subdivision (a) of article III provides in pertinent part:

Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

TEX.CODE CRIM. PROC. ANN. art. 51.14, art. III(a) (Vernon 1979).

■■■ Thus, article III is invoked only when "a detainer has been lodged against [a] prisoner" in another state by Texas authorities because of an "untried indictment, information, or complaint" pending in Texas. *Id.; see New York v. Hill*, 528 U.S. 110, 112, 120 S.Ct. 659, 662, 145 L.Ed.2d 560 (2000); *Miles*, 101 S.W.3d at 183. A detainer is "lodged" when it is filed with the institution holding the prisoner. *See Hill*, 528 U.S. at 112, 120 S.Ct. at 662; *Miles*, 101 S.W.3d at 183–84.

The clerk's record contains "Agreement on Detainers" Forms II, III, IV, and V–B. These documents were filed by the district clerk on November 18, 2003, together with a cover letter from the warden of the

proceedings involving other parties, because there is a dearth of Texas authority addressing these requirements, and because preservation of error is not necessarily the *sine qua non* of appellate review. *See, e.g., Brumit v.*

*State*, No. PD–043–05, —— S.W.3d ——, ——, 2006 WL 1638372, at *5 (Tex.Crim.App. June 14, 2006) (declining to determine whether issue preserved because the record demonstrated no error occurred).

Tennessee prison where Walker was incarcerated before his transfer to Texas.

Item 8 of Form III refers to the following "[d]etainers currently on file against this inmate" (Walker):

Indecency W/ A Child 6 cts Indictment #83-3678L
Warrant #2002-1076-C

Thus, the IAD paperwork delivered to Texas authorities by Tennessee prison officials states that there was at that time a detainer on file with the Tennessee prison for the six-count indictment under which Walker ultimately was tried and convicted in Texas.

Accordingly, article III was invoked in Walker's case because Texas authorities lodged a detainer against him with Tennessee prison officials. *See* TEX.CODE CRIM. PROC. ANN. art. 51.14, art. III(a); *Hill*, 528 U.S. at 112, 120 S.Ct. at 662; *Miles*, 101 S.W.3d at 183–84.

### III. Walker Complied With the IAD

■ The State contends that Walker cannot prevail on his claim because the record does not reflect that Walker properly served the Texas prosecutor with a request to be transferred under the IAD.

■ The prisoner bears the burden of demonstrating compliance with the procedural requirements of article III. *Lindley*, 33 S.W.3d at 930 (citing *United States v. Henson*, 945 F.2d 430, 434 (1st Cir. 1991)). The prisoner may comply by either: (1) delivering his IAD transfer request to the warden where he is imprisoned to be forwarded to the court and prosecuting attorney of the state which lodged the detainer against him; or (2) delivering his transfer request directly to the court and prosecuting attorney of that state. *See* TEX.CODE CRIM. PROC. ANN. art. 51.14, art. III(b) (Vernon 1979); *Bryant v. State*, 819 S.W.2d 927, 931 (Tex.App.-Houston [14th Dist.] 1991, pet. ref'd); *Bur-*

*ton v. State*, 805 S.W.2d 564, 575 (Tex. App.-Dallas 1991, pet. ref'd).

■ If the prisoner delivers the transfer request to the warden where he is incarcerated for forwarding, then the prisoner's "only obligation [i]s to show that he notified the appropriate [prison] officials of his desire to [be transferred]." *Burton*, 805 S.W.2d at 575. Conversely, if the prisoner decides to deliver his transfer request directly to the court and prosecuting attorney of the other state, he is personally responsible to see that the notice is sent by registered or certified mail, return receipt requested, to those authorities. *See Bryant*, 819 S.W.2d at 931; *Burton*, 805 S.W.2d at 575; *see also* TEX.CODE CRIM. PROC. ANN. art. 51.14, art. III(b).

Here, the cover letter accompanying the IAD paperwork clearly reflects that Walker delivered the IAD transfer request to the warden of his Tennessee prison to be forwarded to the Texas court and prosecuting attorney. The warden stated in the cover letter that the IAD paperwork was sent by certified mail, return receipt requested. There is nothing in the record to rebut this statement in the warden's letter.

Accordingly, we hold that Walker satisfied his burden of proving compliance with the requirements of article III. *See Henson*, 945 F.2d at 434; *Lindley*, 33 S.W.3d at 930; *Burton*, 805 S.W.2d at 575.

### IV. Walker Failed To Request A Dismissal In The Trial Court

■ The State next contends that Walker has failed to preserve this issue for appellate review because he failed to request a dismissal in the trial court.

The record reflects that Walker's IAD paperwork was received by Texas authorities on November 18, 2003. This is the date on which the 180–day period began to run. *Fex*, 507 U.S. at 52, 113 S.Ct. at

1091. However, Walker's trial did not commence until more than 325 days later in October 2004.

Walker arrived back in Texas in February 2004. The docket sheet reflects two trial settings for his case: May 24 and October 11. The record also contains a motion for substitution of counsel filed by Walker on April 20 and granted on that same date. Walker did not file a motion to dismiss. The record is silent regarding whether his attorney agreed to any postponement of his trial date.

In *Marin v. State*, the Court of Criminal Appeals identified three categories of rights with regard to error preservation.[2] 851 S.W.2d 275, 279 (Tex.Crim.App.1993).

> [O]ur system may be thought to contain rules of three distinct kinds: (1) absolute requirements and prohibitions; (2) rights of litigants which must be implemented by the system unless expressly waived; and (3) rights of litigants which are to be implemented upon request. In the present context, the most important thing to remember about the Texas law of procedural default is that it only applies to the last category.

*Id.*

The Court of Criminal Appeals has consistently followed this tripartite approach to preservation of error. *See, e.g., id.; Jimenez v. State*, 32 S.W.3d 233, 235 (Tex. Crim.App.2000); *Speth v. State*, 6 S.W.3d 530, 533 n. 5 (Tex.Crim.App.1999). This Court too has followed this approach. *See, e.g., Marbut v. State*, 76 S.W.3d 742, 749–50 (Tex.App.-Waco 2002, pet. ref'd); *Kieschnick v. State*, 911 S.W.2d 156, 162 (Tex.App.-Waco 1995, no pet.); *see also Fonseca v. State*, 163 S.W.3d 98, 100 (Tex. App.-Fort Worth 2005, pet. ref'd); *Modica*

*v. State*, 151 S.W.3d 716, 721 (Tex.App.-Beaumont 2004, pet. ref'd); *Washington v. State*, 127 S.W.3d 197, 202 n. 4 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd, untimely filed); *Hill v. State*, 78 S.W.3d 374, 383 n. 4 (Tex.App.-Tyler 2001, pet. ref'd).

■ Thus, under *Marin* and its progeny the determination of whether and how a defendant must preserve a particular issue for appellate review depends on whether and how the underlying right at issue may be waived.

■ This approach is illustrated by a recent decision of the Court of Criminal Appeals in which the Court held that the right to an interpreter is a "Category Two" right under *Marin*. *Garcia v. State*, 149 S.W.3d 135, 144–45 (Tex.Crim.App. 2004). As the Court explained:

> rights in the second category ... "do not vanish so easily. Although a litigant might give them up and, indeed, has a right to do so, he is never deemed to have done so in fact unless he says so plainly, freely, and intelligently, sometimes in writing and always on the record." Regarding these rights, "the judge has an independent duty to implement them absent an effective waiver by him. As a consequence, failure of the judge to implement them at trial is an error which might be urged on appeal whether or not it was first urged in the trial court."

*Id.* at 144 (quoting *Marin*, 851 S.W.2d at 280) (footnotes omitted).

The Court in *Garcia* first focused on prior decisions which "had concluded that the right to an interpreter could be waived, but that it would not be deemed waived if the trial judge was aware that the defendant had a language problem."

---

2. The Court of Criminal Appeals considers *Marin* "a watershed decision in the law of error-preservation." *Mendez v. State*, 138

S.W.3d 334, 341 (Tex.Crim.App.2004) (quoting *Saldano v. State*, 70 S.W.3d 873, 888 (Tex.Crim.App.2002)).

*Id.* Thus, the Court gave attention to the "waiveability" of this right in determining how to classify it under *Marin.*

In *New York v. Hill,* the respondent argued to the Supreme Court that article III's 180–day deadline can be forfeited only by affirmative conduct on the part of the defendant. 528 U.S. at 118, 120 S.Ct. at 666. The Court likened this contention to the view of the court below in Hill's case that a waiver of the deadlines of the IAD must be accomplished "explicitly or by an affirmative request for treatment that is contrary to or inconsistent with [those deadlines]." *Id.* (quoting *People v. Hill,* 92 N.Y.2d 406, 681 N.Y.S.2d 775, 704 N.E.2d 542, 545 (1998)). However, the Court refused to adopt this position, holding instead that because the respondent's trial counsel had agreed to a continuance beyond the 180–day deadline, the respondent had forfeited his rights under the IAD. *See id.* This holding is consistent with the holdings of several federal circuit courts of appeals and numerous state courts.

The Sixth Circuit has held that a defendant "forfeit[s] his right to raise [an IAD] violation by failing to assert it prior to or during trial." *United States v. Eaddy,* 595 F.2d 341, 346 (6th Cir.1979). Other federal courts have reached similar conclusions. *See, e.g., United States v. Mazza,* 792 F.2d 1210, 1228 (1st Cir.1986); *United States v. Scallion,* 548 F.2d 1168, 1174 (5th Cir. 1977); *but cf. United States v. Crozier,* 259 F.3d 503, 516 (6th Cir.2001) (holding that defense request for continuance be-

yond IAD deadline did not "automatically waive" rights under IAD, but reviewing alleged IAD violation as "plain error"[3] because of failure to object). At least eleven state courts have also adopted this reasoning.[4] Some courts have held that a guilty plea forfeits a defendant's rights under the IAD. *See People v. Wanty,* 189 Mich.App. 291, 471 N.W.2d 922, 923 (1991) (per curiam); *State v. Brocksmith,* 888 P.2d 703, 706 (Utah Ct.App.1994). Others have held that a defendant forfeits his rights under the IAD by agreeing to a continuance beyond the pertinent deadlines. *See People v. Jones,* 197 Mich.App. 76, 495 N.W.2d 159, 161 & n. 1 (1992); *see also Hill,* 528 U.S. at 118, 120 S.Ct. at 666.

Some courts have expressly or implicitly rejected the position that the IAD deadlines may be forfeited by a failure to object. *See, e.g., Brown v. Wolff,* 706 F.2d 902, 907 (9th Cir.1983) ("We think it inappropriate to [find waiver of rights under IAD by failure to object]."); *People v. Allen,* 744 P.2d 73, 78 (Colo.1987) ("defendant's conduct agreeing to two trial dates beyond the 120–day time period was not sufficient to support a finding of waiver") (art. IV only); *Bruce v. State,* 781 A.2d 544, 549 (Del.2001) ("The holding in *[New York v.] Hill* implicitly contemplates a waiver only where the defendant makes a request or agrees to a government request for a continuance that is 'inconsistent with the IAD's time limits.'"); *State v. Edwards,* 509 So.2d 1161, 1163 (Fla.Dist.Ct.

---

**3.** *See* Fed.R.Evid. 103(d) ("Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the trial court.").

**4.** *See Saffold v. State,* 521 So.2d 1368, 1372 (Ala.Crim.App.1987); *Drescher v. Super. Ct.,* 218 Cal.App.3d 1140, 267 Cal.Rptr. 661, 666 (1990); *People v. Moody,* 676 P.2d 691, 695 (Colo.1984) (art. III only); *Johnson v. State,* 442 So.2d 193, 196–97 (Fla.1983); *State v.*

*Schmidt,* 84 Hawai'i 191, 932 P.2d 328, 336 (Haw.Ct.App.1997); *Scrivener v. State,* 441 N.E.2d 954, 956 (Ind.1982); *Ward v. Commonwealth,* 62 S.W.3d 399, 404 (Ky.Ct.App. 2001); *State v. Wells,* 638 N.W.2d 456, 461 (Minn.Ct.App.2002); *Hicks v. State,* 719 S.W.2d 86, 90 n. 4 (Mo.Ct.App.1986); *State v. Harper,* 2 Neb.App. 220, 508 N.W.2d 584, 590 (1993); *State v. Suarez,* 681 S.W.2d 584, 586 (Tenn.Crim.App.1984).

App.1987) (rights under IAD not forfeited by "mere silence"); *State v. Dolbeare*, 140 N.H. 84, 663 A.2d 85, 86–87 (1995) (rights under IAD not forfeited by failure to object); *see also Commonwealth v. Mayle*, 780 A.2d 677, 684 n. 15 (Pa.Super.Ct.2001) ("Appellant's failure to object is not evidence of acquiescence, because any objection to the trial date would have been fruitless.").

This Court has suggested that the right to a dismissal under article IV[5] of the IAD (which is virtually identical to the dismissal requirement of article III)[6] cannot be forfeited.[7] *See Sephus* 32 S.W.3d at 374. Nevertheless, the facts of *Sephus* are distinguishable from the facts of Walker's case because the defendant in *Sephus* filed a pre-trial motion to dismiss under article IV. *Id.* at 371. *Sephus* may also be distinguished because it involved article IV unlike Walker's case which involves article III. *Id.* at 371–72. Thus, we need not revisit *Sephus* at this time. *Compare Allen*, 744 P.2d at 78 (art. IV deadlines not forfeited by failure to object or by agreed continuances), *with People v. Moody*, 676 P.2d 691, 695 (Colo.1984) ("defendant waived his IAD rights [under art. III]

since he did not raise them until after his trial had ended").

■ The Supreme Court expressly rejected the proposition that the forfeiture of the IAD's deadlines may only be accomplished "explicitly or by an affirmative request for treatment that is contrary to or inconsistent with [those deadlines]." *Hill*, 528 U.S. at 118, 120 S.Ct. at 666. As the Court explained, "such an approach would enable defendants to escape justice by willingly accepting treatment inconsistent with the IAD's time limits, and then recanting later on." *Id.* Accordingly, we hold that a claim that the 180–day deadline of article III has been violated is forfeited "by [a] fail[ure] to assert it prior to or during trial." *See Eaddy*, 595 F.2d at 346.[8]

Because a defendant's right to be tried within 180 days under article III may be forfeited by a failure to object, this is a "Category Three" right under *Marin*. *See Garcia*, 149 S.W.3d at 144–45; *Mendez*, 138 S.W.3d at 340; *Marin*, 851 S.W.2d at 279. Therefore, a defendant cannot complain on appeal that his case was not dismissed under article III unless the defendant made a "timely request" or objection

---

**5.** Article IV applies when a state which has charges pending against an inmate incarcerated in another state requests the transfer of the inmate. *See* TEX.CODE CRIM. PROC. ANN. art. 51.14, art. IV (Vernon 1979); *Alabama v. Bozeman*, 533 U.S. 146, 150–51, 121 S.Ct. 2079, 2083, 150 L.Ed.2d 188 (2001). Under article IV, the requesting state "(a) must try the prisoner within 120 days of his arrival, and (b) must not return the prisoner to his 'original place of imprisonment' prior to that trial." *Bozeman*, 533 U.S. at 151, 121 S.Ct. at 2083.

**6.** Article III and article IV both provide that when the pertinent time period has elapsed, the "indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice." TEX.CODE CRIM. PROC.

ANN. art. 51.14, arts. III(d), IV(e) (Vernon 1979).

**7.** As the Court of Criminal Appeals has explained, we must "carefully distinguish [ ] waiver, which requires the intentional relinquishment or abandonment of a known right or privilege, from the forfeiture that is the consequence of not complying with Rule 33.1(a)." *See Mendez*, 138 S.W.3d at 342.

**8.** *Accord Saffold*, 521 So.2d at 1372; *Drescher*, 267 Cal.Rptr. at 666; *Moody*, 676 P.2d at 695; *Johnson*, 442 So.2d at 196–97; *Schmidt*, 932 P.2d at 336; *Scrivener*, 441 N.E.2d at 956; *Ward*, 62 S.W.3d at 404; *Wells*, 638 N.W.2d at 461; *Hicks*, 719 S.W.2d at 90 n. 4; *Harper*, 508 N.W.2d at 590; *Suarez*, 681 S.W.2d at 586.

in the trial court and suffered an adverse ruling. *See* Tex.R.App. P. 33.1(a).

Here, Walker did not request a dismissal in the trial court or object to his trial setting. He may not complain for the first time on appeal that his case should have been dismissed under article III. Accordingly, we overrule his first point.

## V. Ineffective Assistance of Counsel

■ Walker contends in his second point that he received ineffective assistance of counsel at trial because counsel failed to request a dismissal.

We begin with a "strong presumption" that counsel provided reasonably professional assistance, and Walker bears the burden of overcoming this presumption. *See Andrews v. State*, 159 S.W.3d 98, 101 (Tex.Crim.App.2005). Generally, the appellate record is insufficient to satisfy this burden. *Scheanette v. State*, 144 S.W.3d 503, 510 (Tex.Crim.App.2004). If nothing in the record reveals the reason for the act or omission which is the basis of an ineffective assistance complaint, we may not speculate on that reason. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994); *Jones v. State*, 170 S.W.3d 772, 775 (Tex.App.-Waco 2005, pet. ref'd); *Hajjar v. State*, 176 S.W.3d 554, 567 (Tex.App.-Houston [1st Dist.] 2004, pet. ref'd).

It is possible, as Walker suggests, that counsel was ineffective for failing to request a dismissal. However, it is equally possible that counsel agreed to continue Walker's trial setting beyond the 180–day deadline because counsel was continuing to investigate the case, identify witnesses, and/or develop a defensive strategy for trial.

Walker did not raise this issue in a motion for new trial. Without a record elucidating the reason(s) counsel failed to request a dismissal, Walker has failed to overcome the "strong presumption" that counsel provided reasonably professional assistance. *See Andrews*, 159 S.W.3d at 101; *Jones*, 170 S.W.3d at 776–77; *Hajjar*, 176 S.W.3d at 567. Accordingly, we overrule Walker's second point.

## VI. Extraneous Offenses

■ Walker contends in his fourth point that the court abused its discretion by admitting the victim K.J.'s testimony about extraneous offenses he had committed against her because the probative value of this evidence is substantially outweighed by the danger of unfair prejudice.

■ When we consider a complaint that evidence of an extraneous offense has been improperly admitted under Rule 403, we consider:

- how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable—a factor which is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense;
- the potential the other offense evidence has to impress the jury "in some irrational but nevertheless indelible way";
- the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense; and
- the force of the proponent's need for this evidence to prove a fact of consequence, *i.e.*, does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute.

*Manning v. State*, 114 S.W.3d 922, 926 (Tex.Crim.App.2003).

We must give appropriate deference to the trial court's determination that the probative value of the evidence in question

is not substantially outweighed by the danger of unfair prejudice. *Moses v. State,* 105 S.W.3d 622, 627 (Tex.Crim.App.2003).

The appellate court should not conduct a *de novo* review of the record with a view to making a wholly independent judgment whether the probative value of evidence of "other crimes, wrongs, or acts" is substantially outweighed by the danger of unfair prejudice. It should reverse the judgment of the trial court "rarely and only after a clear abuse of discretion."

*Id.* (quoting *Montgomery v. State,* 810 S.W.2d 372, 392 (Tex.Crim.App.1991)).

Here, the court admitted the victim K.J.'s testimony about several instances in Tennessee when Walker engaged in unlawful sexual contact with her. The court also admitted a typewritten statement Walker gave to Tennessee authorities in which he admitted having "sexual contact" with K.J. on several occasions without specifying whether they occurred in Texas or Tennessee. The extraneous acts committed in Tennessee are similar in nature to the acts which K.J. testified Walker had committed against her in Texas. When coupled with Walker's statement, K.J.'s testimony about the extraneous offenses compellingly serves to make it more probable that Walker is the person who committed the Texas offenses (proof of identity) and that he did so with the requisite intent.

Because the evidence concerns the repeated commission of sex crimes against a child, it does have a tendency to impress a juror in an improper manner. *See Montgomery,* 810 S.W.2d at 397.

K.J.'s testimony on this issue takes up 13 of the 265 pages in the trial record of testimony and evidence presented during the guilt-innocence phase or slightly less than five percent. Thus, it cannot be said to have consumed an inordinate amount of time to present. *Cf. Russell v. State,* 113 S.W.3d 530, 545–46 (Tex.App.-Fort Worth 2003, pet. ref'd) (State's evidence regarding extraneous offense involved 12 witnesses, numerous exhibits, and over 200 pages in the record).

Virtually the whole of Walker's argument rests on his contention that lascivious intent was readily inferable from the conduct which K.J. testified he committed against her in Texas. Thus, he contends that the State had little need for the extraneous offense evidence.

The State's need for evidence of an extraneous offense as circumstantial evidence of an element of the charged offense is significantly lessened if the element is readily inferable from other *uncontested* evidence. *See Rankin v. State,* 974 S.W.2d 707, 719 (Tex.Crim.App.1998); *Russell,* 113 S.W.3d at 546; *DeLeon v. State,* 77 S.W.3d 300, 312 (Tex.App.-Austin 2001, pet. ref'd). As the Court of Criminal Appeals stated in *Rankin,* "Where the State's direct evidence … clearly shows the intent element of the crime and that evidence is uncontradicted by the defendant or not undermined by cross-examination of the State's witnesses, the offer of other crimes is unjustified due to the lack of relevancy." *Rankin,* 974 S.W.2d at 719.

Here, K.J.'s testimony "clearly shows" the elements of identity and intent with regard to the charged offenses. However, one of Walker's primary trial strategies appears to have been an effort to undermine this testimony. Defense counsel informed the jury in his opening statement that he considered the allegations "highly questionable." During cross-examination, counsel highlighted K.J.'s failure to report Walker's misconduct to her mother, her aunt, or her school teachers. Counsel also highlighted discrepancies between K.J.'s testimony and statements she made to various authorities in other states. Counsel

focused on these issues in closing argument as well.

Because Walker sought to undermine K.J.'s testimony in opening statements, by cross-examination, and in closing argument, the State's need for the evidence was enhanced. *Cf. Rankin,* 974 S.W.2d at 719; *Russell,* 113 S.W.3d at 546; *DeLeon,* 77 S.W.3d at 312.

Thus, three of the four factors under consideration favor the court's decision to admit the evidence regarding the extraneous offenses. Accordingly, giving appropriate deference to the trial court's decision, we cannot say that the court abused its discretion by admitting this evidence. *See Moses,* 105 S.W.3d at 627. Therefore, we overrule Walker's fourth point.

## VII. Sentencing Issues

Walker contends in his third point that the court erred by ordering his Texas sentences to run consecutively with his Tennessee sentences. He contends in his fifth point that his right to jury trial and his right to due process were violated under *Apprendi* and its progeny because the jury was not asked to determine whether his Texas sentences should run consecutively with his Tennessee sentences.

 Walker argues that, under the version of section 3.03 of the Penal Code applicable to his case, the court had no discretion but to order his Texas sentences to run concurrently with his Tennessee sentences. The pertinent version of section 3.03 provides:

When the accused is found guilty of more than one offense arising out of the same criminal episode prosecuted in a single criminal action, sentence for each offense for which he has been found

guilty shall be pronounced. Such sentences shall run concurrently.

Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 1.01, sec. 3.03, 1993 Tex. Gen. Laws 3586, 3592 (amended 1995) (current version at Tex. Pen.Code Ann. § 3.03(a) (Vernon Supp.2005)).

For section 3.03 to apply, Walker would have to have been convicted (*i.e.,* "found guilty") of the Tennessee offenses and the Texas offenses in the same trial. *See La-Porte v. State,* 840 S.W.2d 412, 414 (Tex. Crim.App.1992); *Dach v. State,* 49 S.W.3d 490, 491 (Tex.App.-Austin 2001, no pet.). Plainly, he was not. Therefore, section 3.03 does not apply to the court's decision to order his Texas sentences to run consecutively with his Tennessee sentences.[9] Accordingly, we overrule Walker's third point.

Walker argues in his fifth point that his right to jury trial and his right to due process were violated under *Apprendi* and its progeny because the jury was not asked to determine whether his Texas sentences should run consecutively with his Tennessee sentences. However, he candidly acknowledges that we have already decided this issue against him in a similar case. *See Marrow v. State,* 169 S.W.3d 328, 330–31 (Tex.App.-Waco 2005, pet. ref'd), *cert. denied,* —— U.S. ——, 126 S.Ct. 1147, 163 L.Ed.2d 1006 (2006). Accordingly, we overrule Walker's fifth point.

We affirm the judgment.

Chief Justice GRAY concurring.

Justice VANCE dissenting.

TOM GRAY Chief Justice, concurring.

---

9. Conversely, section 3.03 mandates that Walker's Texas sentences run concurrently with each other, as they do.

The majority [1] acknowledges in footnote 1 that their discussion of the Interstate Agreement on Detainers Act is irrelevant dicta. Nevertheless, they include it anyway. Not only is the discussion under the headings "The Detainer was 'Lodged' Against Walker," and "Walker Complied With the IADA [Interstate Agreement on Detainers Act]" dicta, but it is also wrong. It is wrong because there was no issue as to the sufficiency of Walker's "proof." Walker's "proof" was not an issue because a motion to obtain the benefits of the IADA was never filed by Walker. Since a motion was never filed, the issue was never joined between Walker and the State. Because the issue was never joined, there is no evidence upon which the trial court, or this Court, could properly make the required findings. In short, application of the IADA was never raised; accordingly, Walker forfeited the ability to complain about the failure to dismiss the indictment on that basis.

While there is not much Texas authority, there is a wealth of federal and other state authority which we can utilize. *See State v. Sephus*, 32 S.W.3d 369, 374–383 (Tex.App.-Waco 2000, pet. ref'd) (Gray, J., dissenting). Basically, the majority does not like what has been written and wants to create its own authority to use in the future. I have no doubt that the majority will.

This Court has historically had a problem in distinguishing that discussion which is necessary for a disposition of the appeal on the issues presented. *Kelly v. State*, 151 S.W.3d 683, 687 (Tex.App.-Waco 2004, no pet.) (Gray, C.J., concurring). Frequently, its inclusion does not present a problem with the ultimate result and may help to satisfy a need for self-aggrandizement. (If the lead opinion can use "elucidating," surely I am entitled to use "self-aggrandizement."). With these comments, I concur in the judgment of the Court.

BILL VANCE, Justice, dissenting.

I join sections I, II, and III of the lead opinion. Because I disagree with the conclusion in section IV, I dissent to the judgment. Alternatively, I would reverse because of ineffective assistance of counsel in not requesting a dismissal (issue two discussed in Section V). I do not discuss the issues in sections VI or VII.

### Federal Precedent

The Interstate Agreement on Detainers is a "congressionally sanctioned interstate compact" between forty-eight states, the Federal Government, and the District of Columbia. *See* U.S. Const. art. 1, § 10, cl. 3; TEX.CODE CRIM. PROC. ANN. art. 51.14 (Vernon 1979). As such, it is a federal law subject to federal construction. *See New York v. Hill*, 528 U.S. 110, 111, 120 S.Ct. 659, 662, 145 L.Ed.2d 560 (2000).

My difference with the lead opinion is not about whether a defendant can waive his rights under Article III of the IAD— he can. The question is: "what must the record show to establish a waiver?" The lead opinion finds waiver from a silent record; I believe that federal law requires that the record affirmatively show a waiver.

*Hill*, the most recent decision under Article III, turned on the question of whether defendant's counsel, as opposed to the defendant personally, could effect such a waiver, and the Court held that counsel can. *Id.* at 114–15, 120 S.Ct. at 664. What suffices for waiver, however, de-

---

1. Justice Reyna is the author of the lead opinion joined by Justice Vance's dissenting opinion.

pends on the nature of the right at issue. *Id.* at 114, 120 S.Ct. at 664. Hill moved to dismiss the indictment, arguing that the IAD's time limit had expired, and in denying the motion, the trial court concluded that "defense counsel's explicit agreement to the trial date constituted a waiver or abandonment of defendant's rights under the IAD." *Id.* at 113, 120 S.Ct. at 663. Thus, unlike the record before us, the record in *Hill* sufficiently demonstrated a waiver. Applying federal precedent, I would sustain Walker's issue.

### Texas Precedent

In applying Texas precedent, the lead opinion inverts the *Marin* analysis by saying, in effect, "because it is a right that may be waived by implication, it must be a category three right." The correct analysis is to determine the category of the right based on the source of the right. *Marin v. State,* 851 S.W.2d 275, 279 (Tex. Crim.App.1993) (rights are of three distinct kinds: absolute requirements and prohibitions; rights of litigants which must be implemented unless waived; and rights to be implemented upon request). Only after determining the nature of the right can one look to *Marin* to determine the duties of the respective players in the judicial system with respect to the right, *i.e.,* the court must implement a category-one right, the litigant must request a category-three right, and the court must implement a category-two right as an independent duty absent an effective waiver, which must be given "plainly, freely, and intelligently, sometimes in writing and always on the record." *Id.* at 279–80.

In my view, the right to a dismissal under Article III of the IAD is a category-two right. *See* Tex.Code Crim. Proc. Ann.

art. 51.14, Art. III; *Marin,* 851 S.W.2d at 279. The Act is the source of the right being categorized, and the language of the Act uniformly imposes a strict sanction for failing to meet its requirements—"dismissal with prejudice"—and uniformly prescribes that charging instruments and detainers shall, when the time limit expires, cease to be of any further "force or effect." Tex.Code Crim. Proc. Ann. art. 51.14, Art. III(d), Art. V(c). The language of the Act demonstrates statutory requirements under Article III that must be implemented unless waived.

To place the right to a dismissal in category three, the lead opinion also draws an artificial distinction between express waivers and implied waivers. *Marin* itself is somewhat inconsistent—sometimes it says "express waiver" and sometimes it just says "waiver." [1] Given the statute at issue in *Marin,* one in which the legislature expressly provided for waiver only "with the consent of the defendant in writing or on the record in open court," it is easy to understand why the opinion would, at times, refer to express waiver. The court did not, however, discuss the distinction that the lead opinion now makes by plucking "expressly waived" from a single sentence in *Marin.* Lead opinion at 847. The general language describing the three categories of rights speaks of "waivable rights," "rights which are waivable only," and "waivable rights, on the other hand, do not vanish so easily." Thus whether the waiver must be express or may be implied is not a proper criterion in categorizing rights under *Marin.*

Furthermore, I believe the lead opinion misconstrues *New York v. Hill,* to bolster its position. *Hill,* 528 U.S. at 118, 120

---

**1.** By my count, the number of times "waiver" alone is used in the opinion exceeds the number of times "express waiver" is used.

S.Ct. at 666. The Supreme Court noted that the "necessary or reasonable continuance" provision is the sole means by which the prosecution can obtain an extension of the time limits over the defendant's objections. The Act requires that any such continuance be for "good cause," be granted in open court, and that the defendant or his counsel be present. Distinguishing between such continuances and "agreed-upon extensions," the Court decided that the action of counsel alone can be sufficient under the act; express assent from the defendant is not required. Reciting the trial court's finding that "defense counsel's *explicit agreement* to the trial date set beyond the 180–day statutory period constituted a waiver or abandonment of defendant's rights under the IAD," the Court upheld that court's denial of a motion to dismiss. *Id.* at 113, 120 S.Ct. at 663 (emphasis added). Thus, in *Hill,* there was an express waiver, consistent with the right to a dismissal under Article III as being a category-two right requiring implementation unless waived on the record, even under the lead opinion's interpretation.

Using Texas precedent, I would hold that the right to a dismissal with prejudice under Article III of the IAD is a category-two right, waivable by the defendant. However, unlike the lead opinion's determination that the right was forfeited by a silent record, I would examine whether the record adequately establishes that Walker waived his rights under the IAD.

What is required to establish waiver?

As noted above, *Marin* describes the process: ["The defendant] is never deemed to have done so in fact unless he says so plainly, freely, and intelligently, sometimes in writing and always on the record." *Marin,* 851 S.W.2d at 280.

Here, the record is silent. The State concedes that nothing in this record shows whether the continuance was "agreed-upon,"[2] for "good cause," in open court, or with counsel or Walker present. Thus, no extension of the time limit can be justified by that part of Article III.

Did Walker "plainly, freely, and intelligently" waive this right? We know he did not do so in writing. And the State agrees that the record is silent about it. Thus, I would hold that the record does not establish that Walker waived his category-two right to a dismissal under Article III of the IAD.

Waiver under the IAD is not established. Walker is entitled to a dismissal. I would enter a judgment dismissing the case with prejudice. Thus, I respectfully dissent.

If the right to a dismissal is ultimately determined to be forfeitable as a category-three right, it is self-evident under this record that counsel's failure to request a dismissal constitutes deficient performance and that such failure prejudiced Walker because the outcome would have been a dismissal. Thus, in the alternative, I would sustain issue two and remand the cause to the trial court for a new trial.

---

2. The Court specifically reserved the question of under what circumstances an agreed-upon delay could fit within the good-cause provision. *Hill,* 528 U.S. at 116 n. 1, 120 S.Ct. at 665 n. 1.