# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00665-CR

**Hugo Augustine Villegas, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR2003-372, HONORABLE GARY L. STEEL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Hugo Augustine Villegas appeals his conviction by a jury of burglary of a habitation. On appeal, he challenges the trial court's denial of his motion to dismiss the indictment against him on the ground the State failed to comply with certain provisions of the Interstate Agreement on Detainers Act (IADA or the Act).[1]  For the reasons that follow, we affirm the judgment of conviction.

## BACKGROUND

Appellant was indicted in October 2003 for burglaries occurring in Comal County on May 29, 2003.  Subsequently, he was indicted in Comal County on a charge of possession of a controlled substance on June 11, 2003, for which he was found guilty after a jury trial in

---

[1]  Tex. Code Crim. Proc. Ann. art. 51.14, arts. I-IX (West 1979).

January 2004. Meanwhile, before he could be sentenced on the drug charge, appellant was indicted and pleaded guilty to the federal offense of transporting undocumented aliens in April 2004. He was sentenced to thirty-seven months in federal prison in July 2004, which he began to serve in Pollock, Louisiana.

Appellant was transported back to Comal County from federal custody for sentencing on the drug charge on November 22, 2004. On that date, appellant requested and completed a form to obtain a court-appointed attorney. Appellant was scheduled to appear on the burglary charge that same date, but his newly appointed counsel was unable to appear in court due to flooding in the county. The proceeding was reset for December 9, 2004. On that date, there was some confusion about whether appellant was still in the county jail or had been returned to federal custody; the county jail prisoner list for court appearances showed that appellant was scheduled to be produced in court on that date. Appellant's appointed counsel advised the court that the State had tendered a plea offer that appellant had rejected and that his client now wished to hire private counsel. Counsel requested a continuance until appellant hired new counsel. The record shows that appellant remained in local custody until at least December 10, 2004; at some unspecified point thereafter, for a reason not appearing in the record, appellant was returned to federal custody with the burglary charge still pending.

While serving his sentence in federal custody, on March 15, 2005, appellant wrote a letter to the Comal County district judge reciting the cause number of his indictment and the nature of the charges against him. Appellant stated that he "waived" his rights under article III of the "Interstate Agreement Act" and requested that the court set his trial date "as soon as possible and

2

have me present for this process and procedure." On April 6, appellant's counsel filed a motion for leave to file additional motions along with a motion for discovery and disclosure of specific items of evidence. On April 17, appellant wrote to the county clerk of the court requesting the address and telephone number of his court-appointed counsel so he could be approved for a "client/attorney phone call." He requested the information be furnished as soon as possible and asked whether a court date had been set and to be advised if one had been set.

A month later, on May 18, 2005, appellant sent a letter to the judge demanding a speedy trial. Appellant stated that he had complied with the requirements of article III of the "Interstate Agreement Act" and requested prompt disposition of his charges as guaranteed by the Sixth Amendment. He urged that the State "has a duty to make a diligent and good faith effort to secure" his presence and to afford him a speedy trial. He also complained that his court-appointed attorney was not responding to his communications, and he expressed confusion as to whose responsibility it was to assist him in filing motions and to secure his presence for trial. Appellant was transported to the Comal County jail in late August 2005.

Trial on the burglary charges was set for September 5, 2005. On August 31, 2005, appellant filed a motion for speedy trial and to dismiss his indictment with prejudice for a violation of article III of the IADA on the ground that appellant timely requested a speedy trial and the State failed to bring the case to trial on or before April 1, 2005. On September 1, 2005, he supplemented the motion, asserting that the State had improperly returned appellant to federal custody prior to disposition of all pending charges in violation of the "anti-shuttling" provision of article IV(e) of the IADA. After hearings on the motion to dismiss prior to trial on September 6 and 7, 2005, the trial

3

court denied the motion, and the case proceeded to trial. A jury found appellant guilty of two counts of burglary of a habitation and made an affirmative finding of the use of a deadly weapon in the commission of the offense. The trial court assessed his eighty-year sentence to run concurrently with his sentence for the federal conviction.

## ANALYSIS

Appellant urges that the trial court erred in failing to dismiss the indictment because of the State's failure to comply with various provisions of the IADA. Specifically, appellant contends that the trial court erred in finding that appellant waived his right to a trial within the 180-day time-limit provision of the Act and that the State violated the Act by returning appellant to federal custody before final disposition of his state burglary charge.

### *Standard of Review*

The denial of a defendant's motion to dismiss an indictment under the IADA is a question of law reviewed *de novo* and the factual findings underlying that decision are reviewed on a clearly erroneous standard. *State v. Miles*, 101 S.W.3d 180, 183 (Tex. App.—Dallas 2003, no pet.); *Lindley v. State*, 33 S.W.3d 926, 930 (Tex. App.—Amarillo 2000, pet. ref'd); *State v. Sephus*, 32 S.W.3d 369, 372 (Tex. App.—Waco 2000, pet. ref'd); *see also United States v. Hall*, 974 F.2d 1201, 1204 (9th Cir. 1992). A clearly erroneous standard is "highly deferential" to the trial court's fact findings. *E.g.*, *Gibson v. State*, 144 S.W.3d 530, 534 (Tex. Crim. App. 2004); *Jasper v. State*, 61 S.W.3d 413, 421-22 (Tex. Crim. App. 2001).

4

*The Interstate Agreement on Detainers Act*

The IADA is a congressionally sanctioned compact between the United States and the states, which provides the procedure whereby persons who are imprisoned in one state, and who are also charged with crimes in another state or federal jurisdiction, can be tried expeditiously for the pending charges while they are serving their current sentences. *Cuyler v. Adams*, 449 U.S. 433, 442 (1981); *Birdwell v. Skeen*, 983 F.2d 1332, 1336 (5th Cir. 1993). Because the Act is a congressionally sanctioned interstate compact, it is subject to federal construction, and Supreme Court interpretations of the Act are binding on state courts. *Cuyler*, 449 U.S. at 442.

Article I of the Act provides that "it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of [outstanding] charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints." Tex. Code Crim. Proc. Ann. art. 51.14, art. I (West 1979). Consistent with this purpose, the IADA allows a state to file a detainer against a defendant residing in a prison in another state, gain temporary custody of the defendant, and prosecute the defendant on the charge that forms the basis of the detainer. *United States v. Mauro*, 436 U.S. 340, 351-52 (1978); *see also Alabama v. Bozeman*, 533 U.S. 146, 150 (2001).

The IADA also provides a mechanism for a person incarcerated in one jurisdiction with charges pending against him in another jurisdiction to be tried on the pending charges before being released from incarceration in the first jurisdiction. Tex. Code Crim. Proc. Ann. art. 51.14, art. I. Either the defendant or the jurisdiction where the charges are pending may demand that the defendant be tried on the pending charges. *Id.* arts. I, III, V.

Article III gives a prisoner against whom a detainer has been lodged the right to "request" a "final disposition" of the relevant charges and prescribes the procedures for a prisoner to follow in requesting disposition of charges for which a detainer has been filed against him. *Id.* art. III. Article III "basically . . . gives a prisoner the right to demand a trial within 180 days." *Bozeman*, 533 U.S. at 151. The IADA requires that the defendant "shall be brought to trial within 180 days"—unless extended by the trial court for good cause shown. Tex. Code Crim. Proc. Ann. art. 51.14, art. III(a). If the requesting prisoner is not brought to trial within the specified time period, the relevant indictment, information, or complaint "shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice." *Id.* art. III(a), (d).[2]

To request final disposition under article III, a defendant must cause "to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the

---

[2] Article III(a) provides:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

Tex. Code Crim. Proc. Ann. art. 51.14, art. III(a).

6

indictment." *Id*. art. III(a); *Lindley*, 33 S.W.3d at 929. The IADA provides that a defendant can perform this requirement by sending the written notice and request for final disposition to the official having custody of him, who would then forward it to the appropriate prosecuting official and court by registered or certified mail. Tex. Code Crim. Proc. Ann. art. 51.14, art. III(b). The 180-day provision does not commence "until the prisoner's request for final disposition of the charges against him has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him." *Fex v. Michigan*, 507 U.S. 43, 52 (1993); *State v. Powell*, 971 S.W.2d 577, 580 (Tex. App.—Dallas 1998, no pet.). The inmate bears the burden of demonstrating strict compliance with the procedural requirements of article III. *Walker v. State*, 201 S.W.3d 841, 846 (Tex. App.—Waco 2006, no pet.); *Lindley*, 33 S.W.3d at 930; *Bryant v. State*, 819 S.W.2d 927, 930-31 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd); *see also United States v. Henson*, 945 F.2d 430, 434 (1st Cir. 1991).

Article IV applies when a state that has charges pending against an inmate incarcerated in another state requests the transfer of the inmate. Tex. Code Crim. Proc. Ann. art. 51.14, art. IV;[3] *Bozeman*, 533 U.S. at 150-51. Article IV permits prosecuting authorities in the state

---

[3] Article IV provides in relevant part:

> (c) In respect of any proceeding made possible by this article, trial shall be commenced within 120 days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.
>
> . . . .
>
> (e) If trial is not had on any indictment, information, or complaint

7

in which charges are pending against the prisoner to obtain his custody for purposes of trial. Tex. Code Crim. Proc. Ann. art. 51.14, art. IV(a). Once the prisoner arrives in the receiving state, the "trial" must begin within 120 days unless extended for "good cause." *Id.* art. IV(c). Article IV also includes an anti-shuttling provision, which requires the prisoner to be tried on any outstanding charges before he is returned to federal custody. *Id.* art. IV(e).

### The Motion to Dismiss

The record shows appellant filed two motions: a First Supplemental Motion for Speedy Trial and Motion to Dismiss with Prejudice ("first motion") filed on August 31, 2005, and a Second Supplemental Motion for Speedy Trial and Motion to Dismiss with Prejudice ("second motion") filed on September 1, 2005.[4] The first motion cited appellant's right to a speedy trial under the IADA, referencing his trial setting of September 5, 2005. Appellant asserted that he had been served with a copy of the State's detainer on October 3, 2004, and that he had timely requested a speedy trial pursuant to article III. He asserted, "The State['s] failure to timely prosecute this cause on or before April 1, 2005 which was the 180th day after [appellant's] request for final disposition

---

> contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to Paragraph (e) of Article V hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

Tex. Code Crim. Proc. Ann. art. 51.14, art. IV.

[4] These are the only motions to dismiss on IADA grounds appearing in the record; there is no original motion in the record.

8

pursuant to the Interstate Agreement on Detainers Act has caused irreparable harm and prejudice to [appellant]," and he urged dismissal with prejudice pursuant to article III(d) of the IADA.

Appellant's second motion again recited that appellant was served with a copy of the State's detainer on October 3, 2004, and timely requested a speedy trial for final disposition pursuant to article III. He then alleged that on November 22, 2004, he appeared in court for sentencing in his drug case and that he was scheduled for a pretrial conference on the same date in his burglary case. He asserted that he was sentenced in the drug case, but that his counsel in the burglary case was unable to appear in court because of heavy rains and flooding. Appellant then asserted that, after he was sentenced in the drug case, he was returned to federal custody prior to the disposition of all pending charges out of Comal County in violation of article IV(e) of the IADA. "Pursuant to Art. 4(e) IADA," appellant urged that his remaining burglary charge should be dismissed.

***Preservation of Error***

Appellant filed a motion to correct and modify his points of error on appeal to include an additional ground the substance of which was not included in the motion to dismiss filed in the trial court below. Specifically, appellant sought to correct and modify his brief to include the anti-shuttling provision of article III(d) as an additional ground for dismissal.[5] After this Court

---

[5] Article III(d) provides in relevant part:

> Any request for final disposition made by a prisoner pursuant to Paragraph (a) hereof shall operate as a request for final disposition of all untried indictments, informations, or complaints on the basis of which detainers have been lodged against the prisoner from the state to whose prosecuting official the request for final disposition is specifically directed. . . . If trial is not had on any indictment, information, or complaint contemplated hereby prior to

9

denied the motion, appellant sought reconsideration of the motion and then, in a reply brief and letter to the Court, sought consideration of the additional ground as unassigned error. We again decline to consider the additional ground and overrule the motion for reconsideration because it was not raised or considered in the court below. *See Sanchez v. State*, No. PD-1754-05, 2006 Tex. Crim. App. LEXIS 2382, at \*10 (Tex. Crim. App. Dec. 13, 2006) (permitting review of unassigned error only if preserved in trial below); *Pena v. State*, 191 S.W.3d 133, 136 (Tex. Crim. App. 2006) (citing *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990)).

Our rules for appellate review generally require a claim of error to be preserved. Texas Rule of Appellate Procedure 33.1 specifies how a complaint is preserved:

> As a prerequisite to presenting a complaint for appellate review, the record must show that:
>
> (1) the complaint was made to the trial court by a timely request, objection, or motion that:
>
> (A) stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; . . . and
>
> (2) the trial court:
>
> (A) ruled on the request, objection, or motion, either expressly or implicitly; or

---

the return of the prisoner to the original place of imprisonment, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

Tex. Code Crim. Proc. Ann. art. 51.14, art. III(d).

(B) refused to rule on the request, objection, or motion, and the complaining party objected to the refusal.

Tex. R. App. P. 33.1(a). A general or imprecise objection may be sufficient to preserve error for appeal, but only if the legal basis for the objection is obvious to the court and to opposing counsel. *Buchanan v. State*, No. PD-0006-06, 2006 Tex. Crim. App. LEXIS 2032, at *6 (Tex. Crim. App. Oct. 18, 2006). When the grounds are not specific and the legal basis is not obvious, the issue is not preserved. *Id.*; *Aldrich v. State*, 104 S.W.3d 890, 894 (Tex. Crim. App. 2003); *see also* 43A George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 42.03 (2d ed. 2001) ("Preservation of error is required, the Court of Criminal Appeals has frequently indicated, in order to provide trial courts or opposing counsel with opportunities to prevent or cure errors so as to permit trial proceedings to continue to a final conclusion free from attack and reversal on appeal."). The policies for requiring specificity pertain here—to inform the trial judge of the basis of the objection and afford him the opportunity to rule on it, and to afford opposing counsel an opportunity to address the objection or supply other testimony. *Aldrich*, 104 S.W.3d at 894.

Here, appellant made clear to the trial judge through the first motion that he sought dismissal based initially on article III(a) because the State failed "to timely prosecute his cause on or before April 1, 2005 which was the 180th day after [appellant's] request for final disposition pursuant to the Interstate Agreement on Detainers Act." In the second motion, appellant added an assertion that appellant's return to federal custody in December 2004 prior to the disposition of all pending charges out of Comal County violated his rights under the anti-shuttling provisions of article IV(e). Because these were the only two grounds stated with sufficient particularity to make the trial

11

court aware of the complaint and were the only grounds considered and ruled upon by the trial court, they are the only grounds preserved on this appeal.

Based on appellant's written motions specifying these two provisions, prior to the commencement of trial, two hearings were held.

*The Hearings*

On September 6 and 7, 2005, prior to jury selection, the trial court held hearings on appellant's motions to dismiss under the IADA. Testimony at the hearings focused on appellant's claims that both the time-limits provision of article III(a) and the anti-shuttling provision of IV(e) were violated. These two issues were the only issues raised at the hearings by appellant's motions and responded to by the State.

Appellant testified that he had sought to obtain a speedy trial under the IADA and at no time had he wanted to give up his rights under article III of the Act. Appellant testified that he wrote the March 2005 letter to notify the district attorney and district clerk that he "waived" his rights under article III but that he did not understand what the word meant. Appellant claimed that in a draft of a letter he had used the word "exercise," but that he changed it to a "legal" word. In May 2005, he wrote a second letter to the court stating that he had complied with all of the requirements for prompt disposition of the detainer and was seeking a speedy trial.

At the hearing, the parties also adduced evidence regarding the continuance granted in December 2004 when appellant was sentenced on the drug charge and had advised his appointed counsel in his burglary case that he wished to hire new counsel. After the court concluded that appellant had sought a continuance to obtain new counsel, that he had waived his rights under

12

article III, and that his rights were not violated because the trial was timely, appellant's counsel then argued that "independent" of the "180-day clock" of article III, "we still have the anti-shuttling claim under Article IV(e), which is the fact that Mr. Villegas was returned to federal prison for his—before this matter was resolved." No additional testimony was adduced. Thus, the hearing focused only on the two provisions that formed the basis of the motions to dismiss in the court below: article III(a) in the first motion relating to the timeliness of the trial and article IV(e) in the second motion relating to the State's obligation to try appellant on pending charges before returning him to federal custody.

At the close of the hearing, the trial court denied appellant's motion on both article III and IV grounds. The judge observed that statutory rights under the IADA can be waived:

> And that's what my ruling is going to be based upon. When an individual takes up those legal books and starts playing with the legal system and starts representing themselves, I think it's an affront to justice to then allow them to come in here and pretend like they didn't understand what they were doing when it was appropriate for whatever ruling they want.

> You can't come in and waive a right asking for a speedy trial and then, when you get here, decide maybe that wasn't a good way to go. "I'm sorry. I didn't mean 'waive.'" I want the record to clearly represent and reflect that I was able to review the credibility of this witness while he was testifying.

> I also looked at the exhibit I admitted, which is the exhibit that is purported to be the rough draft and somehow the word "waived" slipped into it; that based upon the convenience to the defendant of that—as well as the context of that letter is totally incredible and not accepted as a fact in this case.

After finding the defendant not credible in continuing to assert at the hearing that he did not understand the meaning of the word "waive," the court then observed that he found the defendant to be "sophisticated," that "[h]e understands what is going on before the Court," and is trying

13

"to burn the candle at both ends." The court found that the defendant knowingly and intelligently waived his rights under article III of the IADA, that article IV did not apply, and denied the motion on both article III and IV grounds.

### *The Issue on Appeal*

In his supplemental brief on appeal, appellant urged that the State violated the time-limit provision of article III(a) and the anti-shuttling provision of article IV(e). The State responded that, because appellant was brought back pursuant to article III and the State did not perfect the transfer under article IV,[6] only the provisions of article III were invoked. With the filing of his reply brief, appellant now agrees that "because it was the appellant who initiated the provisions of the IAD[A], pursuant to the provisions of Article III of the act," the provisions of article III—and not article IV—apply.

For the first time on appeal, however, appellant now argues that, because article IV was not invoked and article III contains an anti-shuttling provision in paragraph (d) similar to that in article IV(e), he should be allowed to raise the anti-shuttling issue pursuant to article III(d). We disagree. Although articles III and IV contain similar provisions, they address different circumstances. Article IV provides for a request for the production of a prisoner by another state

---

[6] Article IV also requires that a "detainer" be lodged against the prisoner. Here, the State first filed a writ of habeas corpus *ad prosequendum*, which does not constitute a detainer within the meaning of the Act. *See, e.g.*, *United States v. Mauro*, 436 U.S. 340, 349 (1978); *United States v. Beard*, 41 F.3d 1486, 1489 (11th Cir. 1995); *United States v. Jones*, 938 F.2d 447, 449 (3d Cir. 1991). The State subsequently lodged a detainer against appellant but did not otherwise comply with the provisions of article IV(e). We need not address this issue, however, because the parties agree that the requirements of Article IV were not met and this issue is therefore not before us.

where charges are pending, while article III addresses a request by a prisoner for disposition of pending charges in another state. *Compare* Tex. Code Crim. Proc. Ann. art. 51.14, art. III(a), *with id.* art. IV(a). Because of the specificity of the written motions and the focus at the hearings on the specific provisions cited in the motions, only the issues properly raised by motion and resolved at the hearing are preserved. *See Buchanan*, 2006 Tex. Crim. App. LEXIS 2032, at *10; *Aldrich*, 104 S.W.3d at 894. Appellant may not use the grounds cited below to support a different legal theory on appeal. *See Bell v. State*, 938 S.W.2d 35, 54 (Tex. Crim. App. 1996); *Rezac*, 782 S.W.3d at 870. Appellant did not voice his current complaint that the State violated the anti-shuttling provision of article III(d) at the hearings below; the issue was not addressed at the hearings; and he cannot be heard to now raise it on appeal.[7] Having reviewed the two motions, the evidence adduced at the

---

[7] Although appellant argues that the anti-shuttling provisions of articles III and IV are "exactly the same," they are not. Article III(d) provides in pertinent part:

> If trial is not had on any indictment, information, or complaint contemplated hereby *prior to the return of the prisoner to the original place of imprisonment*, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

Tex. Code Crim. Proc. Ann. art. 51.14, art. III(d) (emphasis added).

Article IV(e) contains a similar provision but incorporates an additional element:

> (e) If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being *returned to the original place of imprisonment pursuant to Paragraph (e) of Article V* hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

*Id.* art. IV(e) (emphasis added).

hearings, the argument of counsel, and the court's findings and conclusions, we hold that the only issue preserved for appeal is the time-limits provision of article III(a). The remaining question, then, is whether appellant waived his speedy trial rights under article III(a).

***Waiver***

### 1. Trial court finding of waiver

The rights granted by the IADA can be waived by a defendant. *E.g.*, *Bozeman*, 533 U.S. at 157 (holding that defendant may waive his rights under IV(e)); *New York v. Hill*, 528 U.S. 110, 114 (2000) (holding that defendant may waive his rights under article III); *Brown v. Wolff*, 706 F.2d 902, 907 (9th Cir. 1983) (finding waiver if defendant "affirmatively requests to be treated in a manner contrary to the procedures prescribed by the IAD[A]"); *People v. Jones*, 495 N.W.2d 159, 160 (Mich. Ct. App. 1992) (finding waiver if defendant, "either expressly or impliedly, agrees or requests to be treated in a manner contrary to the terms of the IAD[A]").

---

Article V(e) provides:

> At the earliest practicable time consonant with the purpose of this agreement, the prisoner shall be returned to the sending state.

*Id.* art. V(e). Although the provisions in these articles are similar, article III(d) provides that the prisoner may not be returned to the "original place of imprisonment," while article IV(e) provides that the prisoner may not be returned to the "original place of imprisonment *pursuant to Paragraph (e) of Article V hereof*." (Emphasis added.) Courts that have compared these provisions note the differences between them. *See, e.g.*, *Nebraska v. Reed*, 668 N.W.2d 245, 257-58 (Neb. 2003); *Merchant v. Wyoming*, 4 P.3d 184, 188-89 (Wyo. 2000) (holding that "original place of imprisonment" is more restrictive in article III while article IV allows for the return of the prisoner to the "sending state").

16

What suffices for waiver depends on the nature of the right at issue. *Hill*, 528 U.S. at 114. "[W]hether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake." *United States v. Olano*, 507 U.S. 725, 733 (1993). In *Hill*, the Supreme Court reasoned that certain basic rights may be waived only by the defendant and that for other rights, waiver may be effected by action of counsel. 528 U.S. at 114-15. There is no requirement that a waiver of rights under the IADA be made "knowingly or intelligently" because the Act's protections are not founded on constitutional rights. *E.g.*, *Cooney v. Fulcomer*, 886 F.2d 41, 46 (3d Cir. 1989) (holding violation of IADA is not an infringement of a constitutional right); *United States v. Black*, 609 F.2d 1330, 1334 (9th Cir. 1979) (same); *Camp v. Unites States*, 587 F.2d 397, 400 (8th Cir. 1978) (same); *see also Gray v. Benson*, 608 F.2d 825, 826-27 (10th Cir. 1979) (finding defendant waived IADA rights by requesting transfer to obtain medical treatment); *United States v. Scallion*, 548 F.2d 1168, 1170, 1174 (5th Cir. 1977) (finding defendant estopped from raising article IV(e) claim where he requested return for parole hearing).

Appellant argues that, because the March 2005 "waiver" letter was written after he was returned to federal custody, it could not constitute a waiver and, further, that the letter "fails to constitute a voluntary and knowing waiver" of his rights. We disagree. After writing a letter to the judge waiving his rights under article III in March 2005 and seeking an expedited trial date in May, appellant was transported to Comal County in August. He then filed pretrial motions and a motion seeking dismissal. After conducting two hearings prior to jury selection, the court expressly found that appellant had knowingly waived his rights to the time-limits provision of article III and that

17

article IV did not apply until appellant's return to Comal County in August 2005. The court therefore denied the motions on both article III and IV grounds as raised in appellant's motions. After a hearing that included appellant's testimony, the trial court expressly found that appellant's waiver of his speedy trial rights constituted a waiver of his article III(a) right to have trial on the state charges within 180 days.

Courts have strictly applied the provisions of the IADA. *Bozeman*, 533 U.S. at 153. The burden rests on the prisoner to demonstrate compliance with the procedural requirements of article III. *Lindley*, 33 S.W.3d at 930. Our standard of review is highly deferential to the trial court's fact findings. *Hall*, 974 F.2d at 1204; *Sephus*, 32 S.W.3d at 372. Here, appellant has failed to show that he satisfied this burden. Based upon the evidence adduced at the hearings, the trial court's finding that appellant had waived his rights under the time-limits provision of article III, and the standard of review, we cannot say that the trial court clearly erred.

## 2. *Computation of the time-limits provision*

Moreover, the triggering event for the running of the 180-day time period is the receipt by the non-custodial state—in this case, Texas—of the prisoner's request for a final disposition of the indictment against him. The duty of notifying the appropriate prosecuting officer, in order to invoke the 180-day provision, is specifically placed upon the defendant under the Texas version of the IADA, "after he shall have caused to be delivered to the prosecuting officer . . . his request." Tex. Code Crim. Proc. Ann. art. 51.14, art. III(a). Article III(a) provides that the notice and request for a final disposition shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being

18

held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decision of the state parole agency relating to the prisoner. *Id.*

Appellant asserts that he was served with a detainer on October 3, 2004, and that he timely requested a speedy trial for final disposition pursuant to article III on the same day. When he was returned to Comal County on November 22, he was sentenced on the drug charge for which he had been tried, but through his appointed counsel appellant then sought an adjournment of the hearing and a continuance to hire new counsel in place of his appointed counsel. At some point in December 2004, appellant was returned to federal custody. The record does not show when appellant was returned. In March 2005, appellant advised the court that he waived his article III speedy trial rights and requested a trial setting.

Before this court can determine whether appellant was brought to trial "within the required 180 days," we must first determine the date that triggered the running of the time period. Appellant argues that the State exceeded 180 days, but he did not claim which letter was sufficiently in compliance with the IADA requirements so as to trigger the beginning of the 180-day time period. In his reply brief, appellant urges that "now that we agree that Section 3 is applicable . . . new computations should be made." He argues that the 180-day time limit began on October 19, 2004, when the "prisoner's paperwork" was delivered to the prosecuting officer. In his reply brief, appellant urges,

> Disregarding all other events with regard to tolling the statute provisions, appellant's computations would indicate that on April 17, 2005, the 180 days would terminate.

19

Therefore, absent the "waiver letter ruling" and the continuance ruling, appellant's case should have been tried by April 17, 2005.

To demonstrate compliance with the requirements of III(a), appellant references only a single document evidencing the prosecuting attorney's receipt on October 19, 2004, of a document entitled Evidence of Agent's Authority to Act for Receiving State. But there are no attachments showing appellant's further compliance with article III(a). The information required by article III(a) does not appear in the record.

Even assuming appellant's compliance with the application requirements, the trial court made findings excluding the time periods (i) when appellant sought a continuance through his counsel to obtain new counsel and (ii) between the March "waiver" letter and his May letter requesting prompt disposition of his case. Article III(a) provides "that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." *Id.* art. III(a). The record shows that appellant was returned to Comal County on November 20, 2004, and received appointed counsel. His counsel failed to appear at the November 22 hearing due to flooding. On December 9, 2004, the court granted a continuance to allow appellant to obtain retained counsel. Appellant requested a prompt trial setting in May 2005. The record supports the trial court's conclusion that the State did not exceed 180 days following appellant's request and taking into account any continuances.

3. *Presence of appellant*

Appellant urges that his rights were violated and the court erred in granting a continuance at the request of his counsel on December 9, 2004, when appellant was not present in

20

court. Citing articles 28.01 and 33.03 of the Texas Code of Criminal Procedure and his due process rights under the Texas Constitution in his reply brief, appellant contends that the trial court erred in conducting a "hearing" outside the presence of appellant. *See id.* arts. 28.01, 33.03 (West 2006). At the hearings in September 2005, the court found that on December 9, 2004, the court appointed counsel for appellant and nothing else happened: "[I]t's not notice of pretrial. It's not notice of trial. It's not a waiver of arraignment. It's notice of arraignment pretrial." In a brief colloquy between the trial court, appellant's newly appointed defense counsel, and the prosecutor, defense counsel advised the court that the State had tendered a plea offer that appellant had rejected and that appellant intended to hire private counsel. Defense counsel evidently thought appellant was "already in federal custody." No hearing was held, and no evidence was received. Because the IADA expressly provides for the court to grant "any necessary or reasonable" continuances "for good cause shown in open court, *the prisoner or his counsel being present*," *see id.* art. 51.14, art. III(a) (emphasis added), and no hearing was held, we hold that the trial court did not err in granting a continuance until appellant could retain counsel.

## CONCLUSION

Having overruled appellant's points of error, we affirm the judgment of conviction.

21

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Pemberton

Affirmed

Filed:   February 13, 2007

Do Not Publish