

# IN THE
# TENTH COURT OF APPEALS

### No. 10-07-00097-CR

**UVALDO GONZALES GUZMAN,**

　　　　　　　　　　　　　　　　　　　　　　**Appellant**

　**v.**

**THE STATE OF TEXAS,**

　　　　　　　　　　　　　　　　　　　　　　**Appellee**

---

**From the 272nd District Court**
**Brazos County, Texas**
**Trial Court No. 06-03339-CRF-272**

---

## MEMORANDUM OPINION

---

A jury convicted Uvaldo Gonzales Guzman of indecency with a child.  He pled true to two enhancement paragraphs and the jury assessed his punishment at sixty years' imprisonment.  In his first two issues, Guzman contends that the evidence is legally and factually insufficient to support his conviction.  In his remaining issues, Guzman argues that the trial court erred in overruling his objections to the State's misrepresentations during closing arguments and that he was denied effective assistance of counsel.  We will affirm.

## Background

Guzman and his wife lived adjacent to S.M. and her three children S.A.M. (age 5), M.M. (age 8), and B.M. (age 12). The evidence shows that on February 15, 2006, S.M., M.M., B.M., and several of the children's friends were at home watching a movie. At the end of the evening, S.M. went to her room to go to bed and left the children in the living room to sleep. The State alleges that after M.M. had fallen asleep on the couch, Guzman entered S.M.'s home using a key he had because of previous repair work he had done in the home. Once inside, Guzman allegedly entered the living room, where M.M. was asleep on the couch. M.M. testified that Guzman sat down on the couch, removed her pants, and touched her vagina. She then woke up and went to her mother's room to sleep without telling her anything had happened. Several minutes later, S.M. and M.M. saw Guzman standing in the doorway of S.M.'s bedroom. When S.M. asked why he was there, he told her that he had come to check on them. Guzman left and S.M. and M.M. went back to sleep.

Sometime later that night, a 911 dispatcher called in response to a hang-up call received from S.M.'s telephone. M.M. told S.M. that she had called 911 because she was "startled" that Guzman had earlier been in the house. An officer was dispatched to check on the house and left shortly after checking the premises; M.M. did not tell the officer that Guzman had touched her.

The following day, M.M. told her friend that Guzman had come in the night before and touched her. M.M.'s friend then told M.M.'s older brother B.M. who then told S.M. and other family members. S.M. asked M.M. what happened the night before,

M.M. began to cry, and told her that Guzman had come in and touched her while she was sleeping on the couch. Officer Brian Ruebush came to take M.M.'s statement and she repeated what happened.

Two weeks later, Nick Canto interviewed M.M. at Scotty's House, a child advocacy center. During the recorded interview, M.M. said that Guzman entered the living room and touched her vagina while she was sleeping, but that she did not wake up until after he left. At trial, several witnesses testified, including M.M., whose testimony was largely consistent with her statements in the videotaped interview. Guzman did not testify, and the jury found him guilty of the offense of indecency with a child. This appeal followed.

**Sufficiency of the Evidence**

In his first two issues, Guzman contends that the evidence was both legally and factually insufficient to prove that he was the individual who touched M.M.

When reviewing a challenge to the legal sufficiency of the evidence to establish the elements of the penal offense that forms the basis of the finding of guilt, we must determine whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

We do not resolve any conflict of fact or assign credibility to the witnesses, as this was the function of the trier of the fact. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); *Matson*

*v. State*, 819 S. W.2d 839, 843 (Tex. Crim. App. 1991). Instead, our duty is to determine if both the explicit and implicit findings of the trier of fact are rational by viewing all of the evidence admitted at trial in a light most favorable to the verdict. *Adelman*, 828 S.W.2d at 422. In so doing, any inconsistencies in the evidence are resolved in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); *Matson*, 819 S.W.2d at 843.

In a factual sufficiency review, we ask whether a neutral review of all the evidence, though legally sufficient, demonstrates either that the proof of guilt is so weak or that conflicting evidence is so strong as to render the factfinder's verdict clearly wrong and manifestly unjust. *Watson v. State,* 204 S.W.3d. 404, 414-15 (Tex. Crim. App. 2006); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). "The court reviews the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compares it with the evidence that tends to disprove that fact." *Johnson*, 23 S.W.3d at 7 (quoting *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996)). The appellate court "does not indulge in inferences or confine its view to evidence favoring one side of the case. Rather, it looks at all the evidence on both sides and then makes a predominantly intuitive judgment. . . ." *Id.* (quoting William Powers and Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence*," 69 TEXAS L. REV. 515, 519 (1991)). The nature of a factual sufficiency review authorizes an appellate court, although to a very limited degree, to act as the so-called "thirteenth juror" to review the factfinder's weighing of the evidence and disagree with the factfinder's determination. *Watson*, 204 S.W.3d at 416-17.

Identity may be proved by direct or circumstantial evidence. In fact, identity may be proven by inferences. When there is no direct evidence of the perpetrator's identity elicited from trial witnesses, no formalized procedure is required for the State to prove the identity of the accused. Proof by circumstantial evidence is not subject to a more rigorous standard than is proof by direct evidence. For the purposes of proving guilt beyond a reasonable doubt, direct and circumstantial evidence are equally probative. *Clark v. State,* 47 S.W.3d 211, 214 (Tex. App.—Beaumont 2001, no pet.) (quoting *Roberson v. State,* 16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref'd)).

The jury heard the following evidence identifying Guzman as the perpetrator:

- On February 14, 2006, S.M.'s children and some of their friends were at her apartment. After eating dinner, S.M. left the children in the living room and went to sleep. Around 2:30 a.m., S.M. testified that M.M., who was shaking, came into her bedroom and got in bed with her. A few minutes later, M.M. nudged her and she looked up and saw Guzman standing in her doorway with a beer bottle in his hand. When she asked him what he was doing there, he said he had come to check on them. Guzman then left.

- According to S.M., because Guzman was a maintenance man in her apartment complex, he had a key to her apartment but he was never given permission to enter the apartment unannounced.

- Later that night, a 911 dispatcher called S.M. because someone had called and hung up from her phone. While on the phone with the dispatcher, M.M. told her mother that she had called and hung up. S.M. explained to the dispatcher that the neighbor who had come into their house startled M.M. The dispatcher sent out a patrol officer, who searched the house and assured S.M. and M.M. that Guzman was no longer in the house.

- The next day, S.M. was with her mother and sister. B.M. came in and told all of them that M.M. told her friend from school that Guzman touched her. S.M. then asked M.M. what she had told her friend; M.M. began to cry, and explained to her mother, grandmother, and aunt that when she

was sleeping on the couch the night before, Guzman came in, pulled her pants down, and touched her vagina.

- S.M. found the pants that M.M. slept in the night before and discovered that the zipper was broken. S.M. reported the incident to police, and they dispatched Officer Ruebush to investigate the incident.

- Officer Ruebush testified that M.M. told him that she was sleeping on the couch when she woke up to discover that her pants were off and Guzman was touching her vagina. M.M then told him that she got up and ran into her mother's room to get in bed with her. After speaking with Officer Ruebush, M.M. gave a videotaped interview at Scotty's House.

- At trial, the State introduced the videotape interview made at Scotty's House and played it for the jury. During the interview, M.M. said that she was sleeping on the couch when her next-door neighbor came into the living room. She explained that after her neighbor sat down, he pulled down her pants and panties and then "touched her private spot." M.M. stated that when he touched her private spot his hand constantly moved. M.M. then pulled her pants up, and her neighbor quickly removed his hand. M.M. then went into her mother's bedroom to sleep and a few minutes later, the neighbor came into the bedroom and stated that he wanted to check on them. After the neighbor left, M.M. called 911. M.M. said that the next day she told her friend what happened, and her friend told her brother, who told her mother.

- M.M. testified at trial that on the night of the incident, she, her brother, and their friends were sleeping in the living room. She was lying on the couch when Guzman came in and sat down next to her, pulled her pants down, and started touching her. She stated that she did not remember seeing Guzman touch her, but knew that he had touched her because she felt his hand. When Guzman touched her, his hand stayed still for a short time. She also testified that she did not wake up until Guzman slammed the back door as he was leaving.

Taken together, this provides sufficient direct and circumstantial evidence to identify Guzman as the perpetrator. Guzman argues that the evidence of his identity is insufficient for three reasons. First, he argues that because M.M. stated in her interview at Scotty's House that she was asleep when he allegedly sat down beside her and at trial

she testified that she did not wake up until she allegedly heard him slam the back door as he left, this is insufficient evidence to prove he touched M.M. Although M.M.'s testimony was somewhat ambiguous as to when she woke up after being touched, she initially stated that when she awoke, her pants were off, and Guzman was touching her vagina. She later testified that she did not wake up until she heard Guzman slam the back door. Even so, at no point did she equivocate on the issue of who touched her. Further, M.M.'s testimony is not legally insufficient simply because it is internally inconsistent or conflicts with the testimony of others. *Turner v. State*, 4 S.W.3d 74, 82 (Tex. App.—Waco 1999, no pet.).

Second, Guzman argues that M.M.'s identification of him as the perpetrator was the result of improper suggestions and a tendency for M.M. to agree on leading questions. M.M. identified Guzman as the perpetrator on several occasions before trial and several witnesses confirmed her testimony that she consistently identified Guzman as the perpetrator. There is no evidence in the record to suggest that questions naming Guzman as the perpetrator influenced M.M. Additionally, S.M. testified that M.M.'s initial outcry to her friend named Guzman as the person who touched her.

Finally, Guzman argues that it is more likely that one of the other boys sleeping over that night touched M.M. However, there is no evidence to support this alternative argument. M.M. testified that during the attack all of the boys in the living room remained sleeping. She also testified that the hand that touched her was very large.

Viewing all of the evidence in the light most favorable to the verdict, we conclude that the evidence is legally sufficient such that a rational jury could have

found beyond a reasonable doubt that it was Guzman who committed the essential elements of indecency with a child. Viewing the evidence in a neutral light, we also conclude that the evidence was not so weak that a finding beyond a reasonable doubt that Guzman was the perpetrator was clearly wrong and manifestly unjust. *See Watson*, 204 S.W.3d at 414-15. Because the evidence is both legally and factually sufficient to support a finding that Guzman inappropriately touched M.M. on the night of the incident, we overrule his first and second issues.

## Jury Argument

In his third issue, Guzman argues that the trial court erred in overruling his objection to the State's misrepresentation of the evidence during closing arguments. Specifically, Guzman asserts that a witness may not testify that another witness is untruthful. *Yount v. State*, 872 S.W.2d 706, 711 (Tex. Crim. App. 1975). At trial, the State's closing argument was as follows:

> [State]: This isn't about law enforcement. This is about her. Your daughter comes to you and tells you a consistent story, tells you what happened, is bawling when she's saying it, and she doesn't talk—she tells you, the police, **the trained interviewer who sees cases like this who says she's not lying**; and a year later comes up…
>
> [Guzman]: Judge, I object to that. He never said that.
>
> [State]: Judge, he said there was no indication of deception.
>
> [Guzman]: That's different. He did not say she's not lying.
>
> [The Court]: The objection is overruled but I want to remind the jury that it is not the province of the Court to determine what the facts are. That is the province of the jury. The objection is overruled.

(Emphasis added)

Instead of objecting based on the "truthfulness" argument, trial counsel objected on the grounds that the facts asserted were not in evidence. Consequently, Guzman failed to preserve his complaint on appeal—that one witness cannot testify that another witness is truthful—because this complaint does not comport with the objection made by trial counsel during the closing argument. *See Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) (holding that if objection in trial court differs from complaint on appeal, defendant has failed to preserve complaint for appellate review); *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995) (complaint on appeal must comport with objection at trial and objection stating one legal theory may not be used to support a different legal theory on appeal). We overrule Guzman's third issue.

## Effective Assistance of Counsel

In his fourth issue, Guzman argues that trial counsel provided ineffective assistance by failing to object to (1) the injection of allegedly improper evidence at voir dire; (2) misstatements made by the prosecution during closing argument, and (3) the prosecutor's argument asking the jury to place themselves in the shoes of the victim and her family.

The standard in *Strickland v. Washington* applies to a claim of ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail, a defendant must first show that his counsel's performance was deficient. *Id.* at 687, 104 S.Ct. at 2064; *see Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim.

App. 2002). Then it must be shown that this deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

Appellate review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000).

In assessing Guzman's claims, we apply a strong presumption that trial counsel was competent. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). We presume counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). When, as in this case, there is no evidentiary record developed at a hearing on a motion for new trial, it is extremely difficult to show that trial counsel's performance was deficient. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

*Failure to object*

Guzman argues that trial counsel rendered ineffective assistance by failing to object to the following: First, during voir dire, the prosecutor asked the jury their opinions on the "myths of sexual abuse." Guzman argues that by labeling beliefs as "myths" the prosecution sought to represent to panel members that the contrary propositions, ones favoring the prosecution, were true. Second, Guzman argues that trial counsel should have objected to the following exchange between a panel member and the prosecution. The exchange was as follows:

[Panel Member]: … I got abused as a child; and I mean, to this date, you know, it's every time that word –

[Prosecutor]: I'm sorry.

[Panel Member]: I don't think I would make a good—a good judgment on things.

[Prosecutor]: Let me ask you a question: You don't know the defendant, right? And the defendant is not the person that did this to you, correct?

[Panel Member]: Correct.

[Prosecutor]: As a person sitting on a jury, are you saying right now that you would, because of your prior experience, take that out on him?

Third, Guzman argues that the prosecution made several misstatements during closing argument, including the prosecutor's statement (1) that S.M. testified that M.M. told her that she saw Guzman on the couch, (2) that "only a year later did M.M. deny seeing Guzman on the couch," and (3) that M.M. "blocks out" seeing Guzman on the couch. Guzman argues that trial counsel should have objected to these statements because they either are not supported by the record or reach unreasonable conclusions. *Rodriguez v. State*, 520 S.W.2d 778, 780 (Tex. Crim. App. 1975). Finally, Guzman argues that on two separate occasions, the prosecution asked the jury to place themselves in the shoes of the victim and her family, which is an improper jury argument. *Boyington v. State*, 738 S.W.2d 704, 709 (Tex. App.—Houston [1st Dist.] 1985, no pet.).

We examine Guzman's ineffective assistance claims under the *Strickland* framework. Guzman's arguments demonstrate the "inadequacies inherent in evaluating ineffective assistance claims on direct appeal." *Patterson v. State*, 46 S.W.3d

294, 306 (Tex. App.—Fort Worth 2001, no pet.). Although Guzman filed a motion for new trial, he did not allege ineffective assistance of counsel. There is nothing in the record to show that Guzman presented his claim to the trial court to afford the trial court a chance to hold a hearing and inquire into the reasons for trial counsel's acts or omissions.

Consequently, we cannot determine whether counsel's actions were grounded in sound trial strategy because the record is silent as to possible trial strategies, and we will not speculate on the reasons for those strategies. *Walker v. State*, 201 S.W.3d 841, 850 (Tex. App.—Waco 2006, pet. ref'd). Therefore, Guzman has failed to meet the first prong of *Strickland*. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *Walker*, 201 S.W.3d at 850. Moreover, even if we could discern from the record that Guzman's trial counsel's performance fell below the standard of reasonable professional representation, Guzman has made no showing that but for his trial counsel's failures the outcome of the proceeding would have been different. Consequently, Guzman has failed to meet the second prong of *Strickland*. *See Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069. We overrule his final issue.

## Conclusion

Having overruled all of Guzman's issues, we affirm the trial court's judgment.


BILL VANCE
Justice

Before Chief Justice Gray,
     Justice Vance, and
     Justice Reyna
Affirmed
Opinion delivered and filed November 26, 2008
Do not publish
[CRPM]